**Eulalia MAYORAL, Dorothy Robertson, Irene Carlson, Frances Pryor, Betty Swetlic, and Edwin Swetlic, Plaintiffs,**

v.

**The JEFFCO AMERICAN BAPTIST RESIDENCES, INC., a Colorado corporation, the Baptist Home Association of the Rocky Mountains, a Colorado Corporation, the United States Department of Housing and Urban Development, Samuel R. Pierce, Jr., Secretary, United States Department of Housing and Urban Development, and Gerald Hannon, Acting Regional Administrator, United States Department of Housing and Urban Development, Defendants.**

Civ. A. No. 81-K-1187.

United States District Court,
D. Colorado.

July 31, 1981.

Manuel A. Ramos, Denver, Colo., for plaintiffs.

Mark C. Foster, T. Edward Icenogle, Calkins, Kramer, Grimshaw & Harring, William C. Danks, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The non-federal defendants in this case are operators of the Eaton Terrace Residences in Lakewood, Colorado. They imposed a mandatory $60 monthly charge on residents for a 24-meal ticket that is redeemable at the Eaton Terrace cafeteria. Plaintiffs, who are Eaton Terrace residents, seek preliminary and permanent injunctions barring the non-federal defendants from imposing this mandatory meal ticket charge.[1] During an evidentiary hearing on the preliminary injunction request, all parties stipulated that there were no disputed factual issues remaining and that all remaining legal claims should be consolidated and determined on the basis of the evidence presented. In addition to injunctions, the plaintiffs seek declaratory judgments.

There are two disputes in this case. The first involves section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. Under § 1437f(c)(3) the Secretary of Housing and Urban Development and the project owner are required to enter into an assistance contract so that the share of rent that each tenant must pay is limited to 15–30% of the tenant's income.[2] The issue here is whether the mandatory $60 charge for the monthly meal ticket is "rent" under § 1437f(c)(3).[3]

Plaintiffs' second argument is that defendants are estopped from now imposing a mandatory meal ticket program. Plaintiffs assert that defendants represented to and assured plaintiffs that any meal program at Eaton Terrace would be optional, while at the same time planning a mandatory program. Plaintiffs argue that, because they relied on defendants' representation, defendants should now be estopped from imposing a mandatory program.

---

1. Plaintiffs originally filed this action in state court. Defendants removed to this court under 28 U.S.C. §§ 1441, 1442.

   The federal defendants approved the modification in the Eaton Terrace lease forms requiring the mandatory payments, as required by 24 C.F.R. § 880.607(d), and are therefore properly joined as defendants here.

2. The exact percentage is determined by considering the tenant's relative level of income and other factors. HUD subsidizes the portion of the rent that is payable to the owner that the tenant does not pay.

3. At the hearing defendants offered evidence that it would probably be necessary to close the Eaton Terrace cafeteria if the mandatory meal ticket program were not instituted.

## I IS THE MONTHLY MEAL TICKET CHARGE RENT?

There is no applicable statutory definition of rent. 42 U.S.C. § 1437f(f)(5) defines "rent" to be,

> with respect to members of a cooperative, the charges under the occupancy agreement between such members and the cooperative.

Although this definition would clearly encompass the meal ticket charge, it does not directly apply here because Eaton Terrace is not a cooperative.[4] There is likewise no regulation that specifies whether "rent" is to include meal ticket costs.[5]

The case law is also undecided on this issue. In *Meade v. Hawaii Housing Authority*, Civil No. 74–46 (D. Hawaii 1975) (unpublished), the court held that a mandatory furniture rental charge was "rent" within the meaning of 42 U.S.C. § 1437f (then codified at *id.* § 1402). The court noted that plaintiffs did not have any reasonable alternative housing options and held:

> Under these circumstances, I am of the opinion that the rent ceiling of section 1402(1) applies to these charges for furniture. HUD's interpretation that the statutory scheme is directed at unfurnished dwellings may be correct, but when a low-income individual is forced to pay more than the statutory maximum, defendants cannot avoid that maximum by claiming that the individual received an additional benefit even though the benefit may have been unwanted. The basic premise of the statute is that a low-income family should be able to move into an apartment by paying no more than one-fourth of its income. HHA's mandatory charge, which, when added to the

basic rent, exceeds one-fourth of the income of these families, negates this premise and therefore violates the statute. I see nothing in the statute which requires HHA to offer furniture and therefore I do not intend to say the HHA may not provide furniture as an option for additional cost. It is the present practice of requiring the added payment which is violative of section 1402(1).

*Id.* at 7 (footnote omitted). In *Chambers v. Toledo Jewish Home for the Aged, Inc.*, Case No. C 80–575 (N.D.Ohio 1980) (unpublished), the court held that a mandatory meal charge is not "rent" under 42 U.S.C. § 1437f:

> To state that the meal charge is actually a rent charge is so patently to refute it that this argument of the plaintiff is entitled to no consideration. Indeed, plaintiff cites no court decision or text authority for the proposition that food is shelter. The case relied on most heavily by plaintiff deals with furniture, which obviously is not the same as food. Except perhaps in Virgil's *Aeneid*, there is no reference anywhere to people eating the furniture. Furniture, however, is a definite element of shelter. There is a marked practical difference between furnished and unfurnished living accommodations, but both are always considered shelter. The food charge does not increase the rent charge beyond the limits fixed.

*Id.* at 4.

■ I must decide whether the meal ticket charges should be treated as "rent" under § 1437f, in the absence of any clear precedent. I hold that they should be. Just like any other mandatory charge, the meal ticket charge is one that a tenant

---

4. Defendants assert that Congress intended "rent" to include only "shelter" costs, citing S.Rep.No.91–392, 91st Cong., 1st Sess. (1969), reprinted in 1969 U.S.Cong. & Ad.News 1524, 1542. That reference is to section 211(d) of the Senate bill. That citation is inapposite because Congress amended that section before passing the law. Pub.L. No. 91–152, § 211, 83 Stat. 379, 388 (1969).

5. Any HUD-promulgated regulation of course must still be a reasonable interpretation of the controlling statutes.

24 C.F.R. § 880.201 defines "fair market rent" to include utilities, parking, and "other essential housing services." It is unclear whether "essential housing services" should include the mandatory meal ticket charge, which HUD witnesses indicated was nearly essential for some aged people, but not for others.

must pay in order to live in the complex. While the tenant receives a benefit in return for the meal ticket charges, this is equally true of the other charges, such as those for parking and utilities, that clearly are to be included in "rent." Any charge that is a mandatory condition to occupancy imposes a burden that the tenant must shoulder if she is to continue to live in the complex. All mandatory charges must therefore be considered rent. It is defendants' choice whether or not to furnish and charge for such services, but if they decide to make the charges mandatory, they must be included in "rent" under § 1437f.[6] To hold otherwise would circumvent congress's intent in enacting § 1437f to leave low income families with 70–85% of their incomes to spend or save as they deem best.

Defendants argue that their willingness to offer assistance to tenants who cannot afford the meal tickets immunizes their action from § 1437f. I find this argument to be without merit. Even if a low income tenant can pay the $60 monthly charge, she will suffer a decreased flexibility in spending her limited funds. Of course, this effect will be felt most strongly by those with the lowest incomes. Defendants cannot impose this added burden on the residents, simply to relieve a fiscal stress. *Cf. Fletcher v. Housing Authority of Louisville*, 491 F.2d 793, 806 (6th Cir. 1974) (finding a plan to relieve fiscal stress that favored admitting tenants who could afford to pay higher rent to be contrary to congressional intent).

## II ESTOPPEL

Plaintiffs also argue that defendants should be estopped from altering their standard lease forms to require the mandatory meal ticket payment. They point out that when they moved into the complex they were told by the defendants that there would be an optional meal program. Arguing that they relied on these representations, plaintiffs assert that defendants should now be estopped from instituting a mandatory program. I reject this argument.[7]

The evidence does not indicate that defendants represented that the meal program would always be optional, only that it was optional at the time when plaintiffs moved into the complex. Similarly, a one year lease does not contain any implied representation that the landlord will renew it on the same terms.[8] I find that defendants did not make any representations on which plaintiffs could justifiably rely in assuming that the meal program would remain optional. It is

ORDERED that defendants are permanently enjoined from requiring mandatory charges for food services at Eaton Terrace unless they treat such charges as "rent" for the purposes of section 1437f of title 42 of the United States Code. It is further

ORDERED that plaintiffs' claim for estoppel is denied, and it is further

ORDERED that each party shall be responsible for his, her, or its own attorneys fees, but otherwise the plaintiffs shall have

---

**6.** Defendants argue that injunctive relief is not proper when plaintiffs have an adequate remedy at law: suing for damages after paying the $60 monthly charge. Because plaintiffs are all aged people on whom the uncertainty and added burden of suing for damages would take a great toll, I hold that injunctive relief is proper here. Further, this case is not limited to purely financial matters. The quintessential issue is whether these tenants can be deprived of their freedom to choose. Admittedly, the tenants are free to leave, but it must likewise be admitted that the defendants have availed themselves of federal funding which must be used in furtherance of the clear congressional policy to subsidize the freedom of choice and dignity of life for these aged people. Thus, I hold that

there is no adequate remedy at law which can compensate these tenants for the daily loss of that freedom to choose which, according to their own poignant testimony, is a matter of the utmost concern to each of them. It is that very loss of choice which is irremediable.

**7.** This question is not moot after my ruling on the § 1437f claim. My decision there does not bar defendant from imposing a mandatory program; it only requires them to include the charge in "rent" under § 1437f.

**8.** Defendants do not seek to amend any leases that are still in effect; they only seek to impose the mandatory program on residents whose leases have expired.

judgment as declared above and for their costs herein expended.