726 F.2d 1361
 Eulalia MAYORAL, Dorothy Robertson, Irene Carlson, Frances
Pryor, Betty Swetlic, and Edwin Swetlic,
Plaintiffs-Appellees,
v.
The JEFFCO AMERICAN BAPTIST RESIDENCES, INC., a Colorado
corporation; the Baptist Home Association of the Rocky
Mountains, A Colorado corporation; the United States
Department of Housing and Urban Development; Samuel R.
Pierce, Jr., Secretary, United States Department of Housing
and Urban Development; and Gerald Hannon, Acting Regional
Administrator, United States Department of Housing and Urban
Development, Defendants-Appellants.
 Nos. 81-2108, 81-2167.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 6, 1984.
As Amended April 9, 1984.
 
 T. Edward Icenogle, Denver, Colo. (Mark C. Foster, Denver, Colo., with him on the brief), of Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for defendants-appellants The Jeffco American Baptist Residences, Inc., and The Baptist Home Ass'n of the Rocky Mountains.
 Bruce G. Forrest, Atty., Appellate Staff, Civil Division, Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Robert N. Miller, U.S. Atty., Denver Colo., and Anthony J. Steinmeyer, Atty., Appellate Staff, Civil Division, Dept. of Justice, Washington, D.C., and of counsel: Gershon M. Ratner, Associate Gen. Counsel for Litigation; Howard M. Schmeltzer and John Herold, Dept. of Housing and Urban Development, Washington, D.C., with him on the brief), for defendants-appellants The United States Dept. of Housing and Urban Development.
 Manuel A. Ramos, Legal Aid Society of Metropolitan Denver, Denver, Colo., for plaintiffs-appellees.
 Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiffs-appellees are low-income, elderly tenants of Eaton Terrace Residences, a Jefferson County, Colorado housing project constructed as part of the Section 8 New Construction Housing Program, 42 U.S.C. Sec. 1437f. Defendants-appellants include Jeffco American Baptist Residences, a non-profit, church-affiliated organization that owns Eaton Terrace, and Baptist Home Association of the Rocky Mountains, the corporation that manages Eaton Terrace, (both private plaintiffs are hereafter referred to as Jeffco) and the United States Department of Housing and Urban Development (HUD), which insured the mortgage of Eaton Terrace pursuant to the National Housing Act, 12 U.S.C. Sec. 1715l (d)(3), and which subsidizes the rents of tenants at Eaton Terrace under 42 U.S.C. Sec. 1437f(c).
 
 
 2
 Jeffco, with the approval of HUD, instituted a mandatory meal program for the tenants in this Section 8 housing project. The district court held that the charges for the meal plan constituted "rent" within the meaning of 42 U.S.C. Sec. 1437f(f)(5) (current version at 42 U.S.C. Sec. 1437f(f)(2)). It enjoined the mandatory food program unless HUD would treat the meals as rent and agree to make the monthly payments for the tenants. Mayoral v. Jeffco American Baptist Residences, Inc., 519 F.Supp. 701 (D.Colo.1981). On appeal, all defendants contend that a mandatory payment for meals does not constitute rent and that a mandatory meal plan is both permissible under and consistent with the statute creating the Section 8 program.
 
 
 3
 Eaton Terrace caters to elderly tenants who are capable of caring for themselves or who need only minimum support services. Every apartment has a kitchen, and some of the apartments are equipped for handicapped tenants. The project includes a community dining facility, which is the focus of the dispute in this case. The dining facility is intended to serve three functions: (1) to provide an accessible place to dine for tenants who have difficulty shopping for and preparing their own meals and for whom restaurants are either too expensive or inaccessible; (2) to provide balanced meals prepared under the direction of a dietician; and (3) to provide meals in a setting that encourages interaction among the tenants. During the first year of Eaton Terrace's operation, eating at the dining facility was entirely on a voluntary basis. Because tenant patronage was much less than expected and the facility incurred large losses, Jeffco decided to require each tenant to purchase twenty-four meals per month at $2.50 a meal, a total monthly charge of sixty dollars. Pursuant to HUD regulations, Jeffco obtained the approval of HUD before introducing the program. 24 C.F.R. Sec. 880.607(d). Also, as those regulations require, Jeffco gave the Eaton Terrace tenants notice and an opportunity to comment on the proposed meal plan before officially implementing it. After a series of meetings with Eaton Terrace tenants Jeffco modified the meal program to provide financial assistance contingent on the availability of funding for those who established need and exemptions for those whose work schedules conflicted with the meal schedule or whose dietary needs the cafeteria could not meet.
 
 
 4
 This Court is apparently the first appellate court to consider whether mandatory meal charges are rent under the United States Housing Act and whether HUD can permit the charges under that Act. Although we are ultimately responsible for construing the federal statutes involved, HUD's construction is entitled to deference. In Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), the Court stated,
 
 
 5
 "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' "
 
 
 6
 (quoting Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). With this principle in mind, our analysis convinces us that the trial court erred in its ruling and that the cause must be reversed and remanded.
 
 
 7
 * In arguing that any mandatory meal charge that management imposes as a condition of retaining possession of a dwelling unit is rent, plaintiffs rely upon the statement in the United States Housing Act that the maximum monthly rental Section 8 tenants may be charged includes "all maintenance and management charges which the owner is entitled to receive for each dwelling unit ...." 42 U.S.C. Sec. 1437f(c)(1). They also point to the definition of rent in the implementing regulations for the Section 8 New Construction Housing Program, in which HUD has defined Fair Market Rent as:
 
 
 8
 "HUD's determinations of the rents, including utilities (except telephone), ranges and refrigerators, parking, and all maintenance, management and other essential housing services, which would be required to obtain in a particular market area privately developed and owned, newly constructed rental housing of modest design with suitable amenities."
 
 
 9
 24 C.F.R. Sec. 880.203(a). We fail to see how either statement can be construed to include a mandatory meal plan within the definition of rent. Meade v. Hawaii Housing Authority, No. 74-46 (D.Hawaii Nov. 18, 1975), upon which the district court relied, held that a mandatory furniture rental charge was rent within the meaning of 42 U.S.C. Sec. 1402(1), amended by 42 U.S.C. Sec. 1437a. However, it is a great leap to equate mandatory furniture rental with mandatory meal plans. Apartments with furniture provided are not uncommon; apartments with meals provided are. We agree with Chambers v. Toledo Jewish Home for the Aged, Inc., No. C 80-575 (N.D.Ohio Oct. 23, 1980), which distinguished meals from furniture and held that a mandatory meal charge is not rent under 42 U.S.C. Sec. 1437f:
 
 
 10
 "To state that the meal charge is actually a rent charge is so patently to refute it that this argument of the plaintiff is entitled to no consideration. Indeed, plaintiff cites no court decision or text authority for the proposition that food is shelter. The case relied on most heavily by plaintiff deals with furniture, which obviously is not the same as food. Except perhaps in Virgil's Aeneid, there is no reference anywhere to people eating the furniture. Furniture, however, is a definite element of shelter. There is a marked practical difference between furnished and unfurnished living accommodations, but both are always considered shelter. The food charge does not increase the rent charge beyond the limits fixed."
 
 
 11
 Chambers, slip op. at 4. Nowhere does the United States Housing Act mention food or expressly or impliedly state that a charge for meals constitutes rent. Indeed, the preamble to Section 8, 42 U.S.C. Sec. 1437f(a), states that the statute's purpose is to aid low-income families in obtaining a "decent place to live." To accomplish this goal, Section 8 authorizes HUD to make "assistance payments ... with respect to ... housing." Id. Section 8 provides that the assistance contract HUD enters into with an owner "shall establish the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive for each dwelling unit ...." 42 U.S.C. Sec. 1437f(c)(1) (emphasis added). This rent must be predicated on a "fair market" rent for "dwelling units ... suitable for occupancy." Id. (emphasis added). Each of these phrases is consistent with the commonly understood concept of rent as the charge for a dwelling.
 
 
 12
 Section 8 contains no controlling definition of rent.[1] Thus, the rule of statutory construction requires that we interpret the word in accordance with its ordinary meaning. Meal charges do not fall within the commonly understood concept of rent. Rent is income that an owner of land receives from a tenant for the use or occupation of land. Peterson v. Oklahoma City Housing Authority, 545 F.2d 1270, 1274 (10th Cir.1976). We agree with the statement in Aujero v. CDA Todco, Inc., No. C 82-2766 SW (N.D.Cal. Dec. 13, 1982) granting plaintiffs[1] preliminary injunction to prevent maintenance of a mandatory meal program), that "the fact that an owner of Section 8 housing makes participation in a meal program a condition precedent to occupancy is insufficient evidence to establish that Congress intended the meal program to be included as a part of rent." Id. at 5.[2]
 
 
 13
 Plaintiffs' reliance on Peterson v. Oklahoma City Housing Authority, 545 F.2d 1270 (10th Cir.1976), is not persuasive. In Peterson, this Court rejected the argument that a mandatory security deposit violated the percentage rent limitations in the Brooke Amendment.[3] We pointed out that title to money paid as rent passes to the landowner, and that if the deposits were maintenance deposits, which the landlord could spend in its sole discretion for maintenance of the premises, the sums received would be additional rent. 545 F.2d at 1274. Plaintiffs apparently conclude from Peterson that passage of title is the key to determining whether a payment is rent. Passage of title is certainly one aspect of rent. However, the most important aspect, for our purposes, is that rent is generally payment for shelter, as the Senate Report accompanying the Brooke Amendment indicates:
 
 
 14
 "For purposes of determining the maximum amount of assistance payments with respect to any unit, the 'rental' for such unit would be the proportional share of the total shelter costs to be borne by the low-income tenants ...."
 
 
 15
 S.Rep. No. 91-392, 91st Cong., 1st Sess. 19, reprinted in 1969 U.S.Code Cong. & Ad.News 2780, 2798.
 
 
 16
 Plaintiffs point out that the rental payments of public housing tenants and the residents of Eaton Terrace include trash collection charges and the costs for pest control (HUD, Public Housing Occupancy Handbook 7465.1, chap. 3-5(a), (e) (1978)) and state that now HUD inconsistently argues that a mandatory meal plan is not rent. Neither pest control or trash collection is remotely comparable to food. We perceive no inconsistency.
 
 II
 
 17
 Plaintiffs also argue that the mandatory meal charge imposed on Eaton Terrace tenants contravenes the purpose of Section 8. They rely upon the declaration of policy contained in that Act:
 
 
 18
 "It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income ...."
 
 
 19
 42 U.S.C. Sec. 1437. The district court stated that a holding that mandatory meal charges are not rent would circumvent the congressional intent "to leave low income families with 70-85% of their incomes to spend or save as they deem best." 519 F.Supp. at 704.
 
 
 20
 Despite the pronouncements of the trial court the legislative history of Section 8 is silent concerning Congress' intent in providing that Section 8 tenants could only be charged up to thirty percent of their income for rent. The trial court assumed that this limitation must have meant that Congress intended Section 8 tenants to use all income not allocated for rent as they please. At most, however, the legislative history indicates that Congress intended the Section 8 limitation to apply to charges for shelter so that tenants' remaining income would be available for food, clothing, and other expenses.
 
 
 21
 Much of the controversy in this case centers on the relationship between Section 8 and the Congregate Housing Services Act, 42 U.S.C. Secs. 8001-8010. In the Congregate Housing Services Act, Congress specifically authorized HUD to make contracts to provide social services--especially meal services--in low-income housing. 42 U.S.C. Secs. 8003, 8004(a). The Congregate Housing Services Act applies only to public housing projects and projects for the elderly or handicapped assisted under Sec. 202 of the Housing Act of 1959, 12 U.S.C. Sec. 1701q. See 42 U.S.C. Secs. 8002(2), 8002(9); H.R.Rep. No. 720, 97th Cong., 2d Sess. 4 (1982). The Eaton Terrace project is neither a public housing project nor a project receiving assistance under Sec. 202. In enacting the Congregate Housing Services Act, Congress intended to launch a modest trial program[4] of federal funding for meals and other support services on a secure and continuing basis of three- to five-year contracts. The program was designed to promote the development of housing projects for elderly, handicapped or disabled tenants who needed support services to live independently. But we cannot see how a provision for meal subsidies in one act precludes HUD from permitting a mandatory meal program, paid for by tenants, under another act.
 
 
 22
 A mandatory meal program does not violate the purpose of Section 8. We believe HUD may both strive to limit charges that restrict tenants' discretion to spend income not devoted to rent and permit mandatory meal programs when the programs are necessary to allow continued operation of a dining facility. Because of the needs of many elderly and handicapped tenants, the provision of decent, safe, and sanitary dwellings may also require some provisions for adequate nutrition. Accord Aujero v. CDA Todco, Inc., No. C 82-2766 SW (N.D.Cal. Dec. 22, 1983).
 
 
 23
 The program at Eaton Terrace falls within the guidelines for meal programs set out in HUD Handbook No. 4350.3, chap. 4-13 (1981). The guidelines allow owners of Section 8 projects with dining facilities, as a condition of admission, to require participation in meal programs not to exceed one meal per day, at a modest cost approved by HUD. In deciding to permit mandatory meal plans in Section 8 projects for the elderly, HUD obviously determined that the benefits of the plans, including adequate nutrition for and socialization of elderly tenants, outweighed the plans' restrictions on tenants' disposable incomes. We are not deciding today that Section 8 permits any type of mandatory meal program an owner wants to require that HUD will approve. We only hold that the plan before us, requiring the purchase of twenty-four meals per month at a cost of $2.50 a meal does not contravene the purposes of Section 8.
 
 
 24
 REVERSED AND REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Rent is defined in 42 U.S.C. Sec. 1437f(f)(2), with respect to members of a cooperative, as "the charges under the occupancy agreements between such members and the cooperative." The district court correctly observed that the definition is not directly applicable in this case because Eaton Terrace is not a cooperative
 
 
 [2]
 In Aujero v. CDA Todco, Inc., No. C 82-2766 SW (N.D.Cal. Dec. 22, 1983), the court vacated its decision granting plaintiffs' request for a preliminary injunction. However, with regard to whether mandatory meal plans constitute rent within the meaning of Section 8, the court adopted the analysis set forth in its preliminary order
 
 
 [3]
 The Brooke Amendment, enacted in 1969, amended the United States Housing Act to state that public housing tenants could not be charged more than 25% of their income for rent. 42 U.S.C. Sec. 1402 (current version at 42 U.S.C. Sec. 1437a). Public housing is a HUD assistance program distinct from Section 8. Public housing is always administered by local public housing authorities, whereas Section 8 housing may be privately owned
 
 
 [4]
 The Congregate Housing Services Act authorized $120,000,000 for fiscal years 1979-1982. 42 U.S.C. Sec. 8010. During this four year period only $20,000,000 was appropriated for the program, $10,000,000 in 1978 and $10,000,000 in 1979. See Pub.L. No. 95-392, 92 Stat. 791; Pub.L. No. 96-103, 93 Stat. 771. In 1982, Congress appropriated an additional $4,000,000 for the program, but most of that funding went to extend funding for existing participants through 1984. See Pub.L. No. 97-272, 96 Stat. 1160; H.R.Rep. No. 720, 97th Cong., 2d Sess. 4 (1982)