Federico AUJERO, Juliana Aujero, Jose Lukban, Edurdo Quintero, Marcelino Tenedero, and Ramon Guillem, Plaintiffs-Appellants,

v.

CDA TODCO, INC., d/b/a Dimasalang House, a California Corporation, Barcelon Assoc., Management Corp., a California Corporation, The United States Department of Housing and Urban Development, et al., Defendants-Appellees.

No. 84–1576.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided April 1, 1985.

Bruce Feder, Nancy D. Rasch-Chabot, San Francisco, Cal., for plaintiffs-appellants.

Jonathan Strong, Washington, D.C., Roderick A. McLeod, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants-appellees.

Paul A. Gordon, Hanson, Bridgett, Marcus, Vlahos & Stromberg, San Francisco, Cal., amicus curiae.

Before WALLACE, KENNEDY, and FLETCHER, Circuit Judges.

KENNEDY, Circuit Judge:

Dimasalang House (the House) in San Francisco, California, is a low-income housing project for the elderly, subsidized by federal funding under section 202 of the National Housing Act (NHA), 12 U.S.C. § 1701q (1982), and section 8 of the United States Housing Act of 1937 (USHA), 42 U.S.C. § 1437f (1982). Certain tenants of the House brought this action in district court to challenge the imposition of mandatory meal payments. The record does not disclose that all of the tenants, or even a majority of them, object to the mandatory meals.

The federal appellee is the United States Department of Housing and Urban Development; and the private appellees are the owners and managers of the House, CDA TODCO, Inc. and Barcelon Associates Management Corp. The district court granted appellees' motion for summary judgment and ordered that final judgment be entered in their favor. We affirm.

The principal basis upon which the complaining tenants challenge the mandatory meal payment is that it constitutes rent under section 8 of the USHA and as such, when combined with the payments made for dwelling space, exceeds the maximum rental permitted under that Act. Appellants further contend that the mandatory meal charge, even if not tantamount to additional rent, violates congressional policies which underlie both the USHA and the Congregate Housing Services Act, (CHSA), 42 U.S.C. § 8001 et seq. (1982). Finally, they argue the mandatory meal payment violates constitutional rights of privacy under the first and fifth amendments. None of the contentions has merit.

A jurisdictional question should be mentioned at the outset. It is unsettled whether the USHA gives rise to a private right of action, a point raised on appeal by the private appellees in this case. Compare Perry v. Housing Authority, 664 F.2d 1210, 1213 (4th Cir.1981) (finding no private right of action under the USHA), with Howard v. Pierce, 738 F.2d 722 (6th Cir.1984) (finding an implied right of action). We have not reached that issue, however. We have jurisdiction over the federal appellee under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1982), and this jurisdiction is sufficiently broad to encompass each of the substantive claims in this action. We, therefore, do not reach the question of an implied right of action.

We consider next the argument that the mandatory meal payments constitute rent. Dimasalang House is a 201 unit housing project built for low-income, elderly persons. Unlike similar facilities in the area, the House requires all tenants to pay for some meals as a condition of occupancy. HUD gives specific authorization for such a program. HUD Handbook 4571.1 Rev. 2, § 5–33(c), at 5–25 (1983). The meal program costs each tenant $64.00 per month, in addition to the payment required for occupancy of an individual dwelling unit, and provides five meals per week. All tenants are capable of caring for themselves, and each apartment has a fully equipped kitchen.

Prospective tenants are notified in advance of the meal plan and of the rule that only tenants who desire the service will be accepted. In the vicinity of the House,

there are other low-income housing projects for the elderly which do not have mandatory meal payments.

■ Though the USHA defines rent with respect to cooperatives, *see* 42 U.S.C. § 1437f(f)(2), no definitive sections explicitly apply to a facility such as the House. We have little difficulty, however, in concluding that the meal charge does not constitute rent. We construe the term in accord with its ordinary meaning. Rent normally connotes "[c]onsideration paid for use or occupation of property." Black's Law Dictionary 1166 (5th ed. 1979). This definition corresponds to the usage of the term under the USHA. Section 1437f(c)(3) refers to "payment with respect to any dwelling unit." 42 U.S.C. § 1437f(c)(3) (1982). *See also* 42 U.S.C. § 1437f(a) (1982) (goal of section 8 is to aid low-income families to obtain "a decent place to live"). The legislative history of the USHA provides further support for our interpretation. S.Rep. No. 392, 91st Cong., 1st Sess. 19, *reprinted in* 1969 U.S.Code Cong. & Ad. News 1524, 1542 ("[f]or purposes of determining the maximum amount of assistance payments with respect to any unit, the 'rental' for such unit would be the proportionate share of the total shelter costs to be borne by the low-income tenants of a project attributable to that unit."). These various usages of the term "rent" support the government's theory that rent refers solely to payment for shelter, not payment for shelter and food.

The government's position with regard to the meaning of rent derives further support from HUD's interpretation of that term. In its regulations issued under section 8 Housing Assistance Programs and the section 202 Direct Loan Program, HUD defines fair market rents as:

HUD's determination of the rents, including utilities (except telephone), ranges and refrigerators, parking, and all maintenance, management and other essential housing services, which would be required to obtain, in a particular market area, privately developed and owned,

newly constructed rental housing of modest design with suitable amenities.

24 C.F.R. § 880.203(a) (1984). The agency's interpretation is entitled to judicial deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Mayoral v. Jeffco American Baptist Residences, Inc.,* 726 F.2d 1361, 1363 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984). Rent in the context of the Housing Assistance Programs and the section 202 Direct Loan Program refers solely to payment for shelter, not payment for shelter and food.

Our conclusion is consistent with that reached in other federal cases. Federal courts which to date have considered the precise issue presented here have been unanimous in the conclusion that a mandatory charge imposed for meals does not constitute rent. *Mayoral,* 726 F.2d at 1363–64; *Johnson v. Soundview Apartments Housing Development Fund Co.,* 585 F.Supp. 559, 560 (S.D.N.Y.1984); *Chambers v. Toledo Jewish Home for the Aged, Inc.,* No. C–80–575, slip op. at 4 (N.D. Ohio Oct. 23, 1980), *remanded,* 665 F.2d 1044 (6th Cir.1981) (mem.). Cases cited by appellants are not in point. *Feir v. Carabetta Enterprises, Inc.,* 459 F.Supp. 841, 845–46 (D.Conn.1978) (amount paid for electricity used for air-conditioners is not equivalent to rent); *Meade v. Hawaii Housing Authority,* No. C–74–46 (D.Hawaii Nov. 18, 1975) (mandatory $15.00 charge for furniture is tantamount to rent). *See Chambers,* slip op. at 4.

■ Appellants further contend that the mandatory meal charge, even if not tantamount to additional rent, violates congressional policies which underlie both the USHA and the CHSA. Appellants maintain that the 30 percent rental limitation contained in the Brooke Amendment, 42 U.S.C. § 1437a(a) (1982), manifests a congressional purpose to allow tenants of low-income housing projects complete discretion with regard to the other 70 percent of their monthly incomes. That conclusion, however, cannot be inferred from the history of the Brooke Amendment. At most,

the legislative history indicates that Congress intended to limit the permissible charges for shelter so that tenants' remaining income would be available for food, clothing, and other expenses. As we have noted above, HUD itself follows this interpretation by authorizing the mandatory meal charge. HUD Handbook, *supra.* Had Congress desired to restrict the amounts that section 8 landlords could charge for services other than the provision of the dwelling unit itself, it could have done so. Instead, it limited only subsidized dwelling unit charges, leaving the facility owner free to offer and the tenant free to purchase supplemental services. We do not consider here the question whether a particular service is so related to the provision of the dwelling charge that it must be characterized as rent for purposes of the 30 percent limitation. *See Meade, supra.*

Second, appellants argue that the mandatory meal charge reduces the independence of the residents and fosters the development of an "institutional" atmosphere, contrary to the goals of the CHSA. The argument fails for three reasons. First, the federal appellee has demonstrated that mandatory meal charges assist some elderly persons to live independently. Second, by assuring at least five balanced meals per week, the program reduces the risk of confinement from malnutrition. Third, in contending that the program fosters an institutional atmosphere, appellants confuse the thrust of the expressed congressional concern, namely the concentration of impaired residents in certain projects, with the healthy sense of community fostered by congregate dining. Even if appellants were correct in their argument that the mandatory meal charge runs counter to the intent of the CHSA, they cannot demonstrate the impact of this argument. The House does not receive funds under the CHSA and, as the Tenth Circuit noted in *Mayoral,* "we cannot see how a provision for meal subsidies in one act [CHSA] precludes HUD from permitting a mandatory meal program, paid for by tenants, under another act [USHA]." *Mayoral,* 726 F.2d at 1366.

Finally, the claim that the meal program violates associational and privacy rights under the Constitution is without merit. The claim is predicated upon the factually incorrect premise that the House compels the tenants to eat their meals in the central dining room and thereby eliminates the tenants' control over the persons with whom they eat. Further, even assuming arguendo the accuracy of these factual premises, appellants offer no case authority in support of the alleged constitutional violations.

Accordingly, the orders of the district court granting summary judgment in favor of the appellees are AFFIRMED.