Beverly CURTIS, Virginia Thomas, Christine Blanchard and Arnita Hines, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

HOUSING AUTHORITY OF THE CITY OF OAKLAND; Harold Davis, Executive Director; Donald A. Duffy, Frederick James, William Buford, Ted Dang, Arabella Martinez, and Clara Provost, Members of the Board of Commissioners, Defendants.

No. C–89–1851 EFL.

United States District Court, N.D. California.

Sept. 5, 1990.

Tanya Broder, Michael Rawson, Connie de la Vega, Kirk McInnis, Legal Aid Society of Alameda Co., Oakland, Cal., for plaintiffs.

Diane Simon, Asst. City Atty., Oakland, Cal., for defendants.

Stephen L. Schirle, Chief, Civ. Div., U.S. Atty. Office, San Francisco, Cal., amicus curiae.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

LYNCH, District Judge.

Plaintiffs are tenants in federally assisted public housing projects for low income tenants, owned and operated by defendant Housing Authority of the City of Oakland (hereinafter "OHA"),[1] a public housing authority operating under the United States Housing Act of 1937 (hereinafter "the Act"). 42 U.S.C. §§ 1437, *et seq.* In 1981, OHA adopted a policy discontinuing the provision of stoves to new tenants under the age of 62, continuing maintenance of stoves for existing tenants only for the useful lives of existing stoves, and exempting tenants over the age of 62 from this policy. Plaintiffs allege that this policy violates OHA's obligations under the Act, breaches OHA's contract with the Department of Housing and Urban Development (hereinafter "HUD") for operation of the public housing projects under OHA's management, and constitutes a violation of their civil rights under 42 U.S.C. section 1983 and the fourteenth amendment.

As the facts which give rise to this case are largely undisputed, plaintiffs and defendants have both filed summary judgment motions seeking a ruling on the legality of OHA's policy regarding provision and maintenance of stoves for its tenants. For the reasons set forth in this order, the Court finds that OHA's policy breaches its operating contract with HUD. The Court therefore grants plaintiffs' motion and denies defendants' motion on this issue.

## I. FACTS AND PROCEEDINGS

The current system of federally assisted low income housing programs was established by the Act in 1937. The stated purpose of the Act is:

[T]o remedy the unsafe and unsanitary housing conditions and the acute short-age of decent, safe, and sanitary dwellings for families of low income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

42 U.S.C. § 1437. Stated simply, the Act authorizes HUD to provide financial assistance to local public housing authorities (hereinafter "PHA's") to develop and operate low income housing projects which follow HUD guidelines. Rental payments by the tenants of such projects are statutorily limited to a certain percentage of their income. 42 U.S.C. § 1437a (hereinafter "the Brooke Amendment"). In return for rental payments, the tenants are entitled to reside in "decent, safe, and sanitary dwellings." *Id.*[2]

The terms and conditions of HUD's provision of financial assistance to OHA are governed by an "Annual Contributions Contract" (hereinafter "ACC") between HUD and OHA. The ACC dictates to OHA many of the aspects of the development and operation of its low income housing projects in some detail. In consideration of OHA adhering to these obligations in the development and operation of the projects, HUD agrees in the ACC to provide financial assistance to OHA, including federal guarantees for bond issues for development as well as subsidies to repay the bonds and to meet operating expenses.

Several specific provisions of the ACC are material to the issue currently before the Court. Section 312 of the ACC defines a "project" as including "all personal property ... which is acquired and held in connection with such Project." Section 313 of the ACC permits OHA to dispose of personal property after making a determination, in accordance with section 308, that such personal property is in "excess to the needs" of the project. Section 308 provides

---

1. The named defendants other than OHA are all officials of OHA. For the purposes of this order, all of the named defendants will be referred to collectively as OHA.

2. Both the Brooke Amendment itself and its legislative history are largely silent on the exact meaning of this phrase. It therefore appears that the required composition of the dwelling units for which tenants make rental payments is not dictated by the statute, but rather the more specific terms of the ACC, which is specifically authorized by the Act at 42 U.S.C. sections 1437c and 1437g.

that a determination that personal property is in excess of the needs of the project can be made if the personal property is "no longer useful or necessary to the development or operation of such Project." [3] Finally, section 209 requires OHA to maintain its projects "in good repair, order, and condition."

In 1975, HUD implemented the Performance Funding System (hereinafter "PFS") to calculate the level of operating subsidies which PHA's were to receive. Under PFS, HUD determines the annual operating subsidy to a particular project by subtracting that project's expected income from a predetermined expense level; the difference between these two figures constitutes HUD's operating subsidy to the PHA. The expense level of a PHA is determined by examining the project's operating budget, as well as other factors such as a project's size and age, during a base year and adjusting this expense level annually to account for inflation. [4]

On August 10, 1981, OHA's Board of Commissioners adopted Resolution Number 2439, which set forth its new policy regarding provision and maintenance of stoves for its tenants. [5] It does not appear from the facts that OHA ever sought HUD approval for this action; section 308 of the ACC

does not require that OHA seek such approval. Additionally, OHA never made any public statement regarding a determination that stoves were in excess to the needs of its projects, nor did it make any public finding that stoves were "no longer useful or necessary" to its projects. Its only contentions to the contrary seem to be based on determinations reached privately and/or after Resolution Number 2439 was adopted. [6]

Subsequent to OHA's adoption of its new policy regarding stoves, HUD issued a document entitled Notice 83–35 on July 13, 1984. This document addressed concerns raised by HUD Field Offices which had received requests by PHA's to phase out provision of major appliances. HUD responded to these concerns by directing Field Offices to inform the requesting PHA's that their obligations under the ACC regarding the maintenance and disposition of personal property required continuation of provision and repair of major appliances if the project was developed including these appliances. HUD also directed the Field Offices to inform requesting PHA's that phasing out provision and maintenance of major appliances would be permitted only with HUD approval, follow-

---

3. Although section 308 of the ACC requires OHA to seek HUD approval prior to any conveyance of real property, there is no such requirement in disposing of personal property. All section 308 requires is that OHA "determine" that the personal property is in excess of the needs of the project by finding it to be no longer useful or necessary. As to the exact form this "determination" must take, the ACC is silent.

4. OHA's base year for determining its expense level was 1974–75. As OHA was developing projects including stoves and was continuing to provide and maintain stoves to its tenants during that period, OHA's operating budget indisputably included funds for stove provision and repair.

5. Resolution 2439 reads in pertinent part:
BE IT RESOLVED BY THE COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF OAKLAND, CALIFORNIA:
THAT, thirty days after the posting of this notice, the Authority will discontinue providing stoves to the new residents moving into Authority dwelling units;
THAT, current residents shall be notified immediately that maintenance and repair servic-

es will continue to be provided for the useful life of their stoves, but no stoves will be replaced;
THAT, all residents who are 62 years of age or older and who are heads of household shall be exempt from the provisions of this resolution; and
THAT, the Executive Director, on behalf of the Authority, is hereby authorized to take all actions necessary to implement the foregoing resolution.

6. OHA now contends that it made a determination prior to adopting Resolution Number 2439 that the individual stoves became useless once the cost of repairing the stoves exceeded their resale value. This determination was apparently made apart from any public scrutiny. In addition, OHA also submits that in 1981 it made a private determination, supported by a survey which they conducted in 1988, that stoves were not necessary because a majority of the tenants in OHA's Section 8 program not supplied with stoves had nevertheless acquired them through purchase or gift. Whether these constitute the sort of "determinations" contemplated by the ACC will be addressed by the Court below.

ing provision of an allowance to the affected tenant to replace the removed appliance.[7]

On April 26, 1989, plaintiffs initiated this action by filing their complaint in California Superior Court seeking a writ of mandate to compel OHA to comply with its constitutional, statutory and contractual duties. Plaintiffs further sought damages, as well as declaratory and injunctive relief. OHA timely removed the case to this Court on May 26, 1989. On September 27, 1989, plaintiffs filed an amended complaint which included class action allegations.

On April 20, 1990, plaintiffs and OHA filed their cross-motions for summary judgment currently before the Court; plaintiffs also filed a motion for class certification that same date. At oral argument on the motions on May 18, 1990, the Court granted plaintiffs' motion for class certification and took the cross-motions for summary judgment under submission pending filing of an *amicus curiae* brief by HUD. HUD filed a brief from another case to which it was a party[8] with somewhat similar facts and supplemented this submission with a further brief specific to the facts of this case upon request by the Court.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted if the moving party establishes the absence of any genuine issue of material fact which would preclude a ruling by the Court on the motion as a matter of law. Where, as here, the operative facts are largely undisputed, the disputed issue is especially susceptible to disposition by a summary judgment motion. *Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985). In addition, interpretation and construction of statutes and unambiguous contracts are traditionally matters of law, which are therefore appropriate matters for summary adjudication. *Western Oil & Gas Ass'n v. United States Envtl. Protection Agency*, 767 F.2d 603, 606 (9th Cir.1985) (statutory construction); *Edison v. Reliable Ins. Co.*, 664 F.2d 1130, 1131 (9th Cir.1981) (unambiguous contracts).[9]

## III. DISCUSSION

Plaintiffs make two arguments that they are entitled to a ruling that OHA's policy regarding provision and maintenance of stoves to tenants is somehow illegal. First, they contend that the Brooke Amendment requires OHA to provide stoves to tenants in return for the tenant's statutorily limited rental payments. They arrive at this conclusion, even though HUD disputes this point, by examining the language of the Brooke Amendment itself, and by interpreting HUD's regulations promulgated to implement the Brooke Amendment. Secondly, plaintiffs argue that OHA has breached its obligation to HUD and to them as third party beneficiaries under the ACC to con-

---

7. OHA correctly points out that Notice 83–35 expired on January 31, 1984 and was distributed only to HUD Field Offices and not to any PHA's. It does not appear that HUD ever took any action pursuant to this document.

8. Specifically, HUD filed its "Response to Plaintiffs' Memoranda in Support of Motions for Preliminary Injunction and Partial Summary Judgment" in *Brown v. Housing Authority of the City of Las Vegas*, No. CV–LV–86–305–HDM in the United States District Court for the District of Nevada (hereinafter *"Brown* brief"). That case, in which plaintiffs asserted the illegality of the Las Vegas Housing Authority's practice of charging tenants for refrigerators and stoves, was settled by a Consent Decree approved on September 5, 1989.

9. The Court is well aware that under the federal common law of contracts an agreement is not "unambiguous" if "reasonable people could find its terms susceptible to more than one interpre-

tation." *Kennewick Irr. Dist. v. U.S.*, 880 F.2d 1018, 1032 (9th Cir.1989). However, where there is the possibility of differing interpretations, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir.1983). In addition, simply because the parties dispute a contract's meaning does not mean that the contract is ambiguous. *Int'l Union of Bricklayers & Allied Craftsmen Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985). The Court reviews the parties' summary judgment motions with this standard in mind.

The Court also notes that there has been no real contention here by either side or by HUD that the ACC is an any way ambiguous or fails to reflect the intentions of the parties. Neither has any evidence been adduced to that effect.

tinue to provide stoves once a federally assisted project has been developed including stoves.[10]

OHA disagrees strongly on both of these points. It argues that it is under no statutory or contractual obligation to continue to provide or maintain stoves. In the alternative, OHA posits that it has complied with any contractual obligation it may have under the ACC. For these reasons, OHA feels that it is entitled to a ruling that its policy is legal in all respects as a matter of law.

## A. OHA'S DUTY UNDER THE BROOKE AMENDMENT

The Brooke Amendment expressly limits the portion of its income that a lower income family must pay for rent in order to reside in a federally assisted housing project. 42 U.S.C. § 1437a(a)(1). In return for such rent, a public housing tenant is entitled to live in a "decent, safe, and sanitary dwelling[ ]" with "all necessary appurtenances thereto...." 42 U.S.C.

§ 1437a(b)(1). The Brooke Amendment itself provides no more specific guidance than this as to the required composition of a public housing project. Nevertheless, plaintiffs urge the Court to rule that this language dictates that OHA must provide stoves to its tenants in return for their rental payments.

■ It is true, of course, that the most persuasive evidence of a statute's meaning is the language of the statute itself. Only when there is a "clearly expressed legislative intention to the contrary" should a court interpret a statute inconsistent with the ordinary meaning of its language. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). In the context of this case, however, the language of the statute is far from clear. All the statute says is that the public housing provided to the tenants must be "decent, safe, and sanitary."[11] In addition, case law and the legislative history interpreting the requirements of the Brooke Amendment are sparse.[12]

---

10. Because of the disposition of this motion, the Court does not reach plaintiff's arguments based on section 1983 and the fourteenth amendment.

11. Plaintiffs urge that stoves should be required under the statutory language which includes provision of "all necessary appurtenances" as a part of the rent paid by the tenants. On its surface, this argument has some appeal. The "plain meaning" of the term "appurtenances" is "accessory objects." *Webster's Third New International Dictionary* 107 (1981). The Court agrees with plaintiffs that in today's modern world, a stove could easily be considered a necessary accessory to a rental property.

However, this would misread the statute. The term "appurtenances" is also a legal term of art when used in the context of real property meaning: "Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land...." *Black's Law Dictionary* 94 (5th ed. 1979). The term "appurtenant" is also defined as: "Employed in leases for the purpose of including any easements or servitudes used or enjoyed with the demised premises." *Id.* Under this definition, an appurtenance appears to be an adjunct to real property, especially in the context of leaseholds.

As the Brooke Amendment addresses itself largely to rental property, the Court believes that it is this more legalistic interpretation which should be adopted. Rather than an adjunct to real property, stoves would normally be considered personal property. As such, the Court finds that it would be improper to hold that the plain meaning of the "all necessary appurtenances" language of the Brooke Amendment requires provision by OHA of stoves to its tenants.

12. See e.g., *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Aujero v. CDA Todco, Inc.*, 756 F.2d 1374 (9th Cir.1985).

In *Wright*, the Supreme Court held that HUD's consistent inclusion in its regulations interpreting the Brooke Amendment of a "reasonable amount for utilities" as a part of a tenant's rent meant that a PHA could not impose a monthly utility charge. 479 U.S. at 429-32, 107 S.Ct. at 773-75. Significantly, the Supreme Court also held that HUD's authority to enforce the Act was not exclusive and that tenants of public housing projects had a private right of action under 42 U.S.C. section 1983 to enforce the Brooke Amendment. *Id.* at 423-29, 107 S.Ct. at 770-73.

In *Aujero*, Judge (now Justice) Kennedy wrote for the Ninth Circuit that a meal charge imposed upon tenants in a federally subsidized housing project for the elderly did not violate a statutory limitation on rental payments by tenants. Judge Kennedy reasoned that: "[R]ent refers solely to payments for shelter, not payment for shelter and food." 756 F.2d at 1376.

These two cases provide useful guidelines for interpreting the Brooke Amendment. It is

■ Therefore, as an aid in interpreting the Brooke Amendment, the Court turns to HUD's regulations which implement the statute. In interpreting a statute, a court should defer to the administrative agency charged by Congress with carrying out that statute. *Chemical Manufacturer's Ass'n v. National Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985). To sustain the agency's position, a court need not find the agency's position the only permissible construction of the statute. Only if the agency's interpretation of a statute is not "rational" or clearly contrary to Congressional intent should a court not follow that interpretation. *Id.*

■ Plaintiffs argue that HUD's regulations implementing the Brooke Amendment have consistently interpreted the Brooke Amendment to include stoves as a part of the dwelling unit to which a tenant becomes entitled in return for a statutorily limited rental payment. HUD disputes this contention, both in the *Brown* brief and its *amicus* brief submitted in this case. The *Brown* brief states that:

> HUD does not interpret the Brooke Amendment *per se* to require the provision of stoves and refrigerators without extra charge. Nor does HUD interpret the Brooke Amendment's rent limitation *per se* to require what a tenant pays as "rent" pursuant to the Amendment include charges for stoves and refrigerators.

*Brown* brief at 3.

Plaintiffs assert, however, that HUD's regulations themselves belie HUD's position on this point. As the Court views HUD's actions in implementing the Brooke Amendment as more material than its legal positions taken in response to lawsuits, the Court shall examine HUD's regulations implementing the Brooke Amendment to determine whether HUD has indeed interpreted the Brooke Amendment "rent" limitation clause to include provision and maintenance of stoves.

Plaintiffs first point to a HUD regulation in force in 1981 at the time of OHA's adoption of Resolution Number 2439 as demonstrating that HUD considered provision of stoves to be included in the Brooke Amendment's definition of "rent." In 1981, 24 C.F.R. section 860.403(a) stated:

> *Contract Rent.* Contract rent means the rent charged a tenant for use of dwelling accommodations and equipment (such as ranges and refrigerators but not including furniture), and reasonable amounts of utilities....

While the plaintiffs argue that this language shows conclusively that HUD considered provision of stoves to be within the "rent" definition, HUD contends that this language, rather than requiring PHA's to supply stoves, was not mandatory and was meant only as a non-exclusive list of "equipment" that a PHA might consider providing to its tenants. *Brown* brief at 3–4, note 1.

In 1984, this regulation was amended; the successor to 24 C.F.R. section 860.403(a) does not explicitly include stoves or ranges as a part of "rent." Rather, 24 C.F.R. section 913.103 reads:

> *Tenant Rent.* The amount payable monthly by the Family as rent to the PHA. Where all utilities (except telephone) and other essential housing services are supplied by the PHA, Tenant Rent equals Total Tenant Payment. Where some or all utilities (except telephone) and other essential housing services are not supplied by the PHA and the cost thereof is not included in the amount paid as rent, Tenant Rent equals Total Tenant Payment less the Utility Allowance.

The companion regulation which sets forth the procedure for computing the "Utility Allowance" discussed in 24 C.F.R. section 913.103 states:

> Allowances for both PHA–Furnished and Tenant–Purchased Utilities shall be designed to include such reasonable consumption for major equipment or for util-

worth noting that *Wright* found that a reasonable charge for utilities was included in the term "rent" by examining HUD's regulations,

while the Ninth Circuit was unable to find that a meal charge violated the plain language of the Brooke Amendment in *Aujero.*

ity functions furnished by the PHA for all tenants (e.g., heating furnace, hot water furnace), for essential equipment whether or not furnished by the PHA (e.g., range and refrigerator), and for minor items of equipment (such as toasters and radios) furnished by tenants.

24 C.F.R. § 965.473(b) (1984).

Thus, in the 1984 regulations, it became clear that HUD considered provision of stoves by PHA's to their tenants to be optional.[13] This is consistent with the interpretation of its regulations that HUD now proffers. In addition, it appears to be consistent with the actions HUD has taken over the years in implementing the Brooke Amendment.[14] Therefore, the Court for the purposes of this case accepts HUD's explanation of these regulations as not requiring, but as allowing, PHA's to develop federally assisted housing projects with stoves.

Plaintiffs also argue that 24 C.F.R. section 880.203, which defines "Fair Market Rent" in the context of "Section 8" housing [15] to include ranges and refrigerators, demonstrates that HUD intended for PHA's to provide and maintain stoves for their tenants pursuant to the Brooke Amendment. In support of this argument, plaintiffs cite HUD's administrative comments in the Federal Register that the regulations on public housing and Section 8 housing are to be interpreted in "uniformity." 49 Fed.Reg. 21477 (May 21, 1984).

This argument, however, misses the point of the regulations and the administrative comment. It is clear from the regulations that "Fair Market Rent" merely determines the amount of rent to which a landlord is entitled for a similar unit in the relevant rental marketplace, whether the landlord is an owner of an existing dwelling unit or is the PHA itself in the case of a public housing project. It says nothing about which accessories a public housing tenant is entitled to in return for a monthly rental payment. This definition is therefore directed at the amount HUD must subsidize operators of lower income housing rather than the rents tenants must pay.

The final argument which plaintiffs make in support of their position that OHA is required by the Brooke Amendment, as interpreted by HUD's implementing regulations, is the system for determining OHA's annual operating subsidy, PFS. Although OHA disputes this point, it is clear that its allowable expense level was computed in 1975 using a budget that included allocations for provision and maintenance of stoves, as OHA was providing those services at the time. See 24 C.F.R. §§ 990, et seq.; see also HUD Notice 83–35. It is therefore true that OHA's annual operating subsidy was determined taking into account its policy at the time of providing and maintaining stoves. It is also true that OHA's operating subsidy has not been changed to reflect this fact even after adoption of Resolution Number 2439 in 1981.

However, plaintiffs' argument in this regard ultimately fails because the regulations which dictate PFS are not regulations implementing the Brooke Amendment, but are merely directed toward determining the level of operating subsidy to PHA's. They have nothing to say regarding what is to be provided by a PHA in return for a tenant's

---

**13.** The Court reads 24 C.F.R. section 965.476(b) to require a PHA to provide a tenant only with an utility allowance for the energy consumption by a stove, but not for the stove itself.

**14.** At least nineteen of the over 3200 PHA's operating with HUD assistance have developed some of their projects without stoves and/or refrigerators, and another nine have discontinued maintenance and provision of these appliances in projects developed with them. HUD has taken no action against any of these PHA's. As will be discussed below, the Court does not view these two different courses of action by PHA's to have the same legal implications.

However, the Court does view it as significant, although not legally conclusive, in interpreting HUD's regulations that HUD has taken no action against any of these PHA's, as this inaction has taken place under both the earlier and current set of regulations.

**15.** The "Section 8" program is also provided for in the Act and directed by HUD. See 42 U.S.C. § 1437f. Under the Section 8 program, HUD provides funds to PHA's to compensate owners of existing dwellings for accepting lower rental payments from lower income families than the owner could normally demand on the rental marketplace.

payment of rent. Thus, while it may be true that a PHA which discontinues provision and maintenance of stoves may receive some form of a "windfall" under PFS,[16] this alone is not a source of that PHA's obligation to provide stoves. That obligation must be found elsewhere. To that issue, the Court now turns.

### B. OHA'S OBLIGATIONS UNDER THE ACC

■ Plaintiffs' other major argument that OHA's policy regarding provision and maintenance of stoves to its tenants is illegal is that the policy breaches OHA's obligations under the ACC to HUD and to them as third party beneficiaries to the contract.[17] In its *amicus* brief, HUD appears to agree with this assertion. OHA argues, on the other hand, that plaintiffs and HUD overstate its obligations under the ACC. Alternatively, they contend that they have complied with the ACC even if the Court accepts the interpretation of the ACC proffered by HUD and the plaintiffs.

■ As a preliminary matter, the Court agrees with OHA that it is not under the same obligation to defer to HUD's interpretation of the ACC as it must defer to HUD's interpretation through its regulations of the Brooke Amendment.[18] Even granting OHA's point that HUD is not entitled to any deference at all in its interpretation of the ACC, however, the Court still is obligated to interpret the ACC in a manner that prefers reasonable interpretations over unreasonable ones or ones that would render the contract illusory. *Kennewick Irr. Dist. v. U.S.,* 880 F.2d 1018, 1032 (9th Cir.1989). In addition, a contract is to be construed with reference to the document as a whole, taking into account the overall purpose underlying the document. *Id.*

■ Here, section 312 of the ACC defines a project as including any personal property which is acquired in the course of development or operation of the project. In order to dispose of personal property so acquired, section 313 permits OHA to "determine" under section 308 that such personal property is "excess to the needs" of the project. This determination can be made upon a finding that the personal property is "no longer useful or necessary" to the project. As long as the personal property remains part of the project, OHA remains under an obligation under section 209 to maintain the property in "good repair, order, and condition."[19]

16. This "windfall" may occur because the allowable expense level would have been determined by use of an operating budget that would have included provision and maintenance of stoves. Over the years of operation of PFS, this allowable expense level was increased to account for inflation. It was assumed that provision of the same services as those provided in the base budget year could be provided at the same cost as long as inflation were accounted for. However, by discontinuing provision and maintenance of stoves, OHA continued to receive an operating subsidy which was based on the assumption that it was providing certain services which it was not in fact providing.

17. As discussed above, HUD's authority to enforce the provisions of the Act is not exclusive; the Supreme Court has held that tenants have a private right of action to enforce the Act pursuant to 42 U.S.C. section 1983. *Wright,* 479 U.S. at 423–29, 107 S.Ct. at 770–73. Indeed, it has been held that tenants also have a right, as third party beneficiaries, to enforce the terms of the ACC. *Ashton v. Pierce,* 716 F.2d 56, 66 (D.C.Cir. 1983), *modified on other grounds,* 723 F.2d 70 (D.C.Cir.1983). This is so because the mutual promises in the ACC between HUD and OHA

were clearly intended for the benefits of the tenants. *See* 2 S. Williston, *A Treatise on the Law of Contracts,* § 347 (3rd ed. 1959); *see also* 42 U.S.C. § 1437. For the purposes of this motion, the Court therefore follows the D.C. Circuit's persuasive holding that tenants in an OHA project are third party beneficiaries to the ACC between OHA and HUD in effect for that particular project.

18. Courts have split on whether an agency is entitled to any deference at all in interpreting contracts in situations like the one presented here. *Contrast National Fuel Gas Supply Corp. v. FERC,* 811 F.2d 1563, 1570–72 (D.C.Cir.1987) (agency interpretation entitled to some deference because of expertise in subject matter of agreement except where "interested party") *with Mid Louisiana Gas Co. v. FERC,* 780 F.2d 1238, 1243 (5th Cir.1986) (no deference due agency interpretation where no "technical or factual expertise" brought to bear).

19. OHA becomes obligated to handle personal property so acquired in accordance with the ACC because of the financial assistance rendered by HUD for development and operation

Thus, the crucial issue in this case is whether OHA ever made such a determination that stoves were in excess to the needs of its projects because they were no longer useful or necessary, and whether such determination, if made, was sufficient to meet OHA's obligations under the ACC. Both of these questions turn on an interpretation of the ACC as to what form it requires the determination by OHA to take.

OHA argues, quite correctly, that the ACC does not require that HUD approve OHA's determination pursuant to section 308 prior to disposal of personal property acquired in connection with development or operation of the project. OHA cannot argue, however, that it is required to make no determination whatsoever before disposing of personal property, as the plain language of section 308 requires such a determination.

OHA submits, through declarations and deposition testimony, that prior to adopting Resolution Number 2439, it determined that stoves became "useless" to its projects once the cost of repairing the stoves exceeded their market value. When, where and how this determination was made remains unclear from the record. OHA does not appear, however, to genuinely dispute that it never made any such finding publicly, or in a manner accessible to anyone outside of OHA's boardroom or executive offices.[20]

Furthermore, OHA contends it made a determination that stoves were not necessary to the project because OHA staff members were aware in 1981 that Section 8 tenants had generally been able to acquire stoves through their own resources when not furnished by a landlord.[21] In addition, OHA submits that prior to adopting Resolution Number 2439, OHA had determined that to continue providing and maintaining stoves would, given HUD's subsidy limitations, have caused OHA to become insolvent.

OHA is correct when it argues that it need only find that the stoves were *either* not useful or not necessary, rather than both. This position is supported by the plain language of section 308 of the ACC. Beyond that point, however, the Court parts ways with OHA on the proper interpretation of the ACC. In the final analysis, the Court finds that OHA's proffered interpretation is an unreasonable one which would render the contract illusory.

OHA would have the Court rule that OHA was entitled to determine, without public or tenant input, and without any later public accountability, that the stoves were in excess to the needs of its projects, and that it could discontinue their provision and maintenance despite the fact that the stoves were purchased largely with federal financial assistance. To allow this interpretation would read the determination requirement out of the ACC altogether, as OHA would be permitted to act in an entirely arbitrary and self-serving fashion.

of OHA's projects. Because of this funding assistance, HUD has an obvious interest in overseeing the disposition of any personal or real property purchased at least in part with federal funds.

**20.** OHA contends that plaintiffs have not provided sufficient evidence to demonstrate the absence of any factual questions on this issue in order to entitle them to summary judgment. Plaintiffs have, however, submitted a copy of Resolution Number 2439, OHA's public notice of its change of policy regarding provision and maintenance of stoves, which shows no sign of any determination by OHA. The only evidence OHA has proffered in response appears to be after the fact justification of its actions. Although OHA is entitled to have favorable inferences drawn in its favor for the purposes of plaintiffs' motion, it has absolutely failed to

rebut even this showing by plaintiffs of a lack of a public determination. In these circumstances, there can hardly be said to be a *genuine* issue of *material* fact regarding the nature of OHA's purported determination that the stoves were either useless or unnecessary.

**21.** OHA also relies on a 1988 survey which it later conducted of Section 8 tenants which confirmed this view. However, no evidence of either the reliability of this survey has been submitted. The Court also questions the applicability of the survey to this case, since it was made seven years after the adoption of Resolution Number 2439 and because section 8 is an entirely different program than the public housing program at issue here. The Court therefore will not consider this survey in evaluating OHA's determination that the stoves were no longer necessary.

Such a decision by this Court would be contrary to the spirit of the ACC and the United States Housing Act, both of which were expressly intended for the benefit of lower income individuals and families, not the PHA's charged with carrying out this policy.[22]

Instead, the Court holds that section 308 of the ACC requires, prior to disposal of personal property acquired in connection with the development or operation of a project, a public notice of a determination by OHA that such personal property is either no longer useful or no longer necessary. Such notice should be reasonably calculated to communicate the substance of OHA's determination to the affected tenants and should at least take the form of a public posting of the relevant determination by OHA in a place reasonably accessible to those tenants.[23]

Additionally, the Court holds that OHA's determination must be a rational one within the context of the purpose of the ACC. In other words, there must be some relationship between OHA's determination that the personal property in question is no longer useful or no longer necessary and the interests the primary beneficiaries of the ACC, the low income tenants of OHA's projects. A determination based on OHA's own economic interests will not be sufficient under this standard, especially when such a deter-

mination is directly contrary to the tenants' interests.

With this standard in mind, the Court finds that in this case, OHA's determination regarding provision and maintenance of stoves breaches the ACC. As discussed above, there is no genuine issue of fact regarding whether OHA ever made a *public* statement of its determination that the stoves were no longer useful or necessary to its projects. The sort of private decision followed by after the fact justification which OHA has engaged in here breaches OHA's obligations under the ACC to HUD and the tenants as third party beneficiaries. OHA purchased the stoves with public money, became obligated to repair and maintain them, and accepted some limitation on their disposition. OHA incurred public responsibility for the personal property which it purchased with public funds for the public benefit; it cannot now avoid this responsibility without some form of public accountability.

■ Furthermore, even if the Court were to accept OHA's notice of its determination as proper, the Court would also find that OHA's reasons for determining the stoves to be no longer useful or necessary to be without a rational relationship to the interests of the tenants. OHA based its finding that the stoves were no longer useful on a straight economic analysis: When

---

**22.** OHA could argue that part of the stated purpose of the Act is "to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. § 1437. However, the same section of the Act also states that PHA's should exercise this discretion over their local housing programs in a manner consistent with the objectives of the Act in providing "decent, safe, and sanitary dwellings for families of lower income...." *Id.* The Court views the actions of OHA to have overstepped its autonomy in such a way that its actions have begun to impinge on the true objectives of the Act, to benefit lower income individuals and families.

**23.** The Court is aware that a public notice requirement is not explicitly present in section 308 of the ACC. However, the Court feels that such a requirement is at least implicit in that OHA must make a determination that personal property is no longer useful or necessary to its projects. The Court reads the ACC to require

that this determination be made prior or simultaneously to the decision to dispose of the property.

Hence, the public notice requirement imposed by the Court pursuant to the ACC is largely a mechanical one to facilitate public accountability on the part of OHA and to prevent the sort of proof difficulties which arise in this sort of case, where no determination is made in public prior to the disposition. In this situation, a court or a jury is forced to try to decide what form exactly a prior determination took with very little in the way of factually supporting evidence.

The Court doubts, from a purely analytical standpoint, that failure to provide public notice should always be fatal to a determination by OHA regarding the usefulness of personal property as long as the substantive rationality requirement, discussed below, is met by such determination. Nevertheless, the Court believes that the requirement is a reasonable one, completely in harmony with the intentions of section 308 and the ACC in general.

an individual stove reaches a point where it costs more to repair than its market value, it becomes useless. This analysis misses the point of section 308 almost entirely as it is based on OHA's own economic interests rather than the interests of the tenants of OHA's projects.

Section 308 assumes that personal property acquired during the development or operation of a project with federal assistance was useful to the tenants when purchased. To determine otherwise, OHA must show more than mere obsolescence of an individual piece of equipment. Rather, it must show that some condition or combination of conditions has occurred which renders the property useless or unnecessary *to the affected tenants.* Absent such a showing, OHA remains under an obligation, pursuant to section 209 of the ACC, to maintain the property in good repair and, indeed, to replace it when repair is no longer economical.[24]

One other factor mitigates against crediting as rational OHA's purported determination of the stoves as useless. Resolution Number 2439 explicitly exempts tenants over the age of 62 from OHA's policy of discontinuing stove provision and maintenance. Why a stove is less useful to a younger tenant family than to an elderly tenant remains a mystery to the Court. Surely, younger tenants have an equal need to cook their meals as do elderly tenants. This part of OHA's purported determination strains all credibility.

OHA's also claims that it made a determination that stoves were no longer necessary to public housing tenants because it was aware in 1981 that Section 8 tenants were generally able to acquire stoves

through their own resources. The Court considers this determination to be faulty as well because it does not take into consideration the interests of the tenants of OHA's public housing projects.

Section 8 is a program quite different from the public housing program; Section 8 tenants generally receive housing in existing privately owned dwellings, as opposed to the typical public housing tenant who resides in a project developed by a PHA. The decision to provide a stove by a section 8 landlord is driven by economic factors, e.g., whether offering for rental a dwelling unit without a stove makes economic sense in terms of the reimbursement the landlord is likely to get from HUD. Furthermore, the section 8 landlord is not bound by the same ACC as is a PHA. Because of the differing nature of the two programs, the Court cannot see that there is any basis for having made a necessity determination by utilizing facts arising out of the Section 8 program.[25]

OHA's final argument that it made a proper determination under section 308 that stoves were no longer useful or necessary to the tenants is purely financial. OHA contends that it made a determination that continuing to maintain and provide stoves would cause it to become insolvent. OHA argues that this justification is within the dictates of expired HUD Notice 83–35, which expressly states that substantial cost savings would be one factor which HUD would consider in approving a request by a PHA to discontinue providing and maintaining major appliances. OHA misreads the notice, however, which goes on to say that HUD approval would be forthcoming

---

**24.** OHA contends that a ruling requiring it to continue to maintain or to replace obsolescent stoves would also require it to replace items less important to the tenants and its projects. As an example, it cites common room furniture.

The Court admits that it is difficult to foresee a situation in which a decision discontinuing provision and maintenance of stoves purchased with federal assistance would ever have a rational relationship to the interests of the tenants. In the case of common room furniture, however, OHA could easily conduct a survey of use of common areas which could form the factual basis for finding the furniture to be no

longer useful if tenants simply did not use them because of dangerousness or undesirability of the areas, or indeed for any other reason.

**25.** In addition, OHA never explains the source of this generalized knowledge about Section 8 tenants acquiring stoves with their own resources. There does not therefore appear to be any factual basis for using this in support of a necessity determination under section 308 of the ACC. Without a reliable survey taken prior to the determination, the Court simply cannot credit this "knowledge" on the part of OHA.

only if the PHA provided an allowance to the affected tenant to replace the lost appliance, which OHA has not done.

Furthermore, the Court finds it inappropriate that OHA would rely on "substantial cost savings" alone to support a determination that stoves were no longer useful or necessary in its projects. PFS was adopted to encourage efficient budget management by PHA's; OHA's operating subsidy was calculated based on an operating budget in which OHA allocated funds for provision and maintenance of stoves. In this context, OHA was charged with the responsibility of running its budget efficiently within the limitations set by PFS. The Court fails to see how OHA's failure to meet its budgetary limitations translates into a justification for discontinuing an important service to its tenants which was part of its budgetary allocation to begin with.[26]

Thus, the Court finds that OHA did not make a proper determination under section 308 of the ACC that stoves were no longer useful or necessary to the Project. OHA may, of course, attempt to make such a determination in the future, but it must do so in accordance with the terms of this order. Once it has done so, OHA remains accountable to either its tenants or to HUD, who are entitled to bring an action in court challenging OHA's action.

## IV. CONCLUSION

Therefore, plaintiffs' motion for partial summary judgment is granted on the grounds that OHA's actions violate its obligations under the ACC.[27] The Court considers that the only remaining issue in this case is determination of the proper remedies to be afforded the various plaintiffs. The Court suggests that identification of the class action plaintiffs and division of the plaintiffs into sub-classes based on differing entitlements because of differing factual situations should be the next step before final remedies are determined.[28] The parties shall appear at a status conference before the Court on Wednesday, Octo-

---

**26.** This justification by OHA of its actions is clearly central to this case. Viewing this case rationally, there can be little doubt that OHA discontinued provision and maintenance of stoves to its public housing tenants because it could not afford to continue its previous policy within its budgetary constraints. In the context of a normal business operation, such a justification might be acceptable. In this situation, however, OHA is charged with the public trust, responsible for providing "decent, safe, and sanitary dwellings" to its tenants. Through the ACC it becomes responsible to its lower income tenants and to HUD. Therefore, OHA must, under the terms of the ACC and the United States Housing Act, act in a manner which takes the interests of the tenants and the public which HUD represents into consideration.

**27.** Plaintiffs submit that a breach of the ACC also constitutes a violation of the Brooke Amendment and, the Court assumes, a violation of their civil rights under 42 U.S.C. section 1983. They argue that because denial of a stove which is part of a project under the ACC amounts to charging rent above the Brooke ceiling, because a tenant must necessarily purchase another means of cooking. The Court does not agree with this argument.

In its *Brown* brief, HUD argued that an *additional charge* for stoves and refrigerators, once the appliances had been purchased in conjunction with development and operation of a project, violated the ACC and also the Brooke

Amendment because the ACC made the appliances part of the tenant's dwelling unit for which the Brooke Amendment limited rental charges. Here, there is no additional charge to tenants; if tenants are able, they may acquire a stove free of charge through charitable organizations or gift. Thus, there is no expenditure required of tenants by OHA above the Brooke Amendment maximum rent in this case.

Plaintiffs may also argue that a violation of the ACC constitutes a violation of other provisions of the Act which authorize the issuance of an ACC and set forth certain guidelines to be met by an ACC between HUD and an OHA. *See* 42 U.S.C. 1437c and 1437g. This argument fares no better than the argument based on the Brooke Amendment. The statutory provisions of the Act regarding the contents of an ACC, while detailed, do not set forth every conceivable material term of a specific ACC. Technically, there remains leeway for negotiation of specific terms between HUD and an ACC. Therefore, not every violation of the ACC is a violation of the Act. The violation of the ACC in this case presents just one of those situations.

For these reasons, the Court finds only a violation by OHA of the ACC and not the Brooke Amendment.

**28.** The Court also notes that plaintiffs, as third party beneficiaries to the ACC, are entitled only to those remedies to which they would be entitled under the contract if they were themselves parties. *Ashton,* 716 F.2d at 66.

ber 31, 1990 at 8:45 A.M. to discuss this and any other remaining issues.

IT IS SO ORDERED.