Josefina GONZALEZ, Chuen Chu Wong, Mo Long Wong, Oscar Weiss, Jose Torres, Poa Kong Chong, Edna Singleton, Crispula Zaragoza, Randall Smith, Frances Friedkiss, Manuela Concepcion, Rita Mena, Nora Robertson, Josephine Lisi, Gim Oy Lee, Leon Lee, Roselyn Lee, Su-Uo Chen Yen, Guey Check Chung, Charlotte Ehrlich, Harry N. Beckerman, Ann Piaggessi, and Katherine Caracciola, Plaintiffs,

v.

ST. MARGARET'S HOUSE HOUSING DEVELOPMENT FUND CORPORATION, a New York Corporation, the United States Department of Housing and Urban Development, and Samuel R. Pierce, Jr., as Secretary of the U.S. Department of Housing and Urban Development, Defendants.

No. 84 Civ. 1697 (PNL).

United States District Court,
S.D. New York.

July 12, 1985.

As Amended Sept. 11, 1985.

Kalman Finkel, Civ. Div., The Legal Aid Society, John E. Kirlin, Director of Litigation, Civ. Appeals & Law Reform Unit (Helen Hershkoff, Scott A. Rosenberg, of counsel), Norman Siegel, MFY Legal Services, Inc., Daniel L. Greenberg, Managing Atty. (Margarita Lopez Torres, of counsel), Estroff, Waldman & Poretsky (Jonathan D. Siegfried, Mark Olinsky, of counsel), New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Richard W. Mark, Asst. U.S. Atty., of counsel), John W. Herold, Trial Atty., U.S. Dept. of Housing and Urban Development, Washington, D.C., for defendants. The U.S. Dept. of Housing and Urban Development and Samuel R. Pierce, Jr., as Secretary of the U.S. Dept. of Housing and Urban Development.

Carter, Ledyard & Milburn, Louis L. Stanton, Vincent Monte-Sano, Donald F. Simone, New York City, for defendant St. Margaret's House Housing Development Fund Corp.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiffs are elderly tenants at St. Margaret's House, a low income housing project in New York City operated by defendant St. Margaret's House Housing Development Fund Corporation. Plaintiffs challenge the imposition by St. Margaret's of a mandatory meal service charge as a condition of occupancy there. Defendants, St. Margaret's and the U.S. Department of Housing and Urban Development (HUD), move to dismiss the complaint pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a cause of action.

*Background*

St. Margaret's is a facility whose construction was financed by a direct loan from HUD, pursuant to § 202 of the Housing Act of 1959, 12 U.S.C. § 1701g. As provided under Section 8 of the United States Housing Act of 1937, tenants at St. Margaret's pay a fixed 30% of their income for rent, 42 U.S.C. § 1437a, and HUD pays the remainder of the fair market rent in the form of Housing Assistance Payments (HAP), 42 U.S.C. § 1437f. As a precondition for occupancy, tenants are required by St. Margaret's to sign a lease agreeing to participate in a mandatory meal service charge of $110.00 per month, not scaled to their income, which provides for one meal per day. There are no express exemptions from the plan for health or religious dietary restrictions, and there are no refunds for meals not eaten.

Plaintiffs are tenants who do not want to participate in the meal program. Their first claim for relief is that the imposition of a mandatory meal service charge as a condition of occupancy requires tenants to pay more than 30% of their adjusted income for rent and therefore violates the Brooke Amendment of Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437a(a)(1), which imposed the percentage limitation on the rent for assisted units. Plaintiffs further claim the mandatory meal charge violates the purpose of Section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, to provide low-income elderly or handicapped persons with affordable housing of modest design supportive of independent living.

Plaintiffs' second and third claims allege that the mandatory meal plan violates the

Regulatory Agreement and Housing Assistance Payments contract between HUD and St. Margaret's, of which plaintiffs claim to be third-party beneficiaries.

The fourth and fifth claims allege that HUD's approval of the mandatory meal charge violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because it is a substantive rule that was not legally promulgated through notice and comment; it constitutes arbitrary agency action; and it failed to provide procedures to establish reasonable exemptions from the mandatory meal charge.

The sixth claim charges that HUD violated plaintiffs' due process rights under the Fifth Amendment by approving the mandatory meal charge and thereby depriving them of their property without providing minimal procedures for determining whether the meal charge is an essential service, necessary in light of each tenant's needs, or otherwise permissible under the Brooke Amendment.

Plaintiffs seek an order declaring the mandatory meal charge illegal and unconstitutional, and an injunction preventing the defendants from imposing the mandatory meal charge in its current form. Plaintiffs maintain that the meal charge is an essential housing service that should count as part of the total rent that is subsidized by HUD, thereby leaving the tenants' rent at 30% of their income including the meal charge; alternatively plaintiffs contend the meal charge should be optional for each tenant.

*Discussion*

Defendants move to dismiss the complaint. As to the first, second, third and sixth claims, defendants argue that food is not rent so that the mandatory meal charge does not violate the Brooke Amendment. Further, defendants assert that no private right of action exists for plaintiffs to bring suit under the United States Housing Act of 1937 or the Housing Act of 1959. Defendants argue that plaintiffs are not intended third-party beneficiaries of the HAP and Regulatory Agreements between HUD and St. Margaret's and therefore cannot bring suit based on those agreements. Finally, HUD claims the approval of the mandatory meal charge did not violate the Administrative Procedure Act or the due process clause of the Constitution.

### 1. *Food as an element of Rent*

Defendants argue that the mandatory meal charge is not "rent" in the normal meaning of the word. Therefore, they argue the fact that the meal charge increases tenants' payments above 30% of their income does not violate the Brooke Amendment, which applies only to rent charges.

It is true that, in normal usage, food is not rent. Nonetheless, from the perspective of the tenant, any charge required as a condition of occupancy can be seen as rent, particularly if the charge is attributed to a service the tenant does not desire and does not use. In my view meal charges may very well be rent under Section 8 if they are mandatory.

If St. Margaret's House imposed a mandatory supplemental charge for floral arrangements in the lounges, required as a condition of occupancy, this would surely be considered "rent" by an occupant who would not be spending those funds on flowers, given the choice. Given the purpose of the Brooke Amendment to provide publicly assisted housing for persons of very low income by assuring that the rental charges imposed on them not exceed 30% of their income, a mandatory charge beyond the 30% can defeat the Act's purpose, especially where the tenant realizes no commensurate saving by utilization of the supplemental service.

I recognize contrary authorities, *e.g.,* *Aujero v. Todco, Inc.,* 756 F.2d 1374 (9th Cir.1985); *Mayoral v. Jeffco American Baptist Residences,* 726 F.2d 1361 (10th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984), but I respectfully decline to follow them. The congressional intent behind the Brooke Amendment was to provide rental assistance in behalf of "very low-income tenants" of public housing projects, in response to the con-

cern that "the neediest families have been excluded from the public housing program." S.Rep. No. 91–392, 91st Cong. 1st Sess. (1969), reprinted in [1969] U.S.Code Cong. & Ad.News 1524, 1542. It sought to secure tenancy at a price not exceeding a fixed percentage of income to permit low income families access to publicly assisted housing. Those who could afford to pay 30% of their income cannot necessarily afford 30% plus $110 mandatory meal charge, particularly if it is for food they do not desire or should not eat.

■ I reject defendants' argument that a mandatory food charge cannot be rent under the statute. Whether this food charge is rent raises a triable issue. To the extent defendants' motion depends on that contention, it is denied.

2. *Private Right of Action*

Defendants argue that plaintiffs have no private right of action under § 8 of the United States Housing Act of 1937 or § 202 of the Housing Act of 1959. No explicit provision grants tenants a right of action to sue for its alleged violations. Defendants argue that none should be implied.

■ The factors used in determining whether Congress intended to create a private remedy are: 1) whether plaintiffs are in the class of persons Congress intended to benefit by enactment of the statute; 2) whether there is legislative intent either to deny or to provide a private remedy in light of the statute's legislative history; 3) whether the existence of a private remedy would be consistent with the underlying purpose of the legislative scheme; and 4) whether the action is one more appropriately a concern of state rather than federal law. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984); *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

Among the stated purposes of the United States Housing Act of 1937 is:

to assist the several States ... to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income....

42 U.S.C. § 1437. The Brooke Amendment imposes a percentage of income limit on rent chargeable to tenants of low income housing. 42 U.S.C. § 1437a(a). The authorization of housing assistance payments to make up the difference is stated to be "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a).

It appears that the persons Congress intended as beneficiaries are the low income tenants and would-be-tenants of public housing. Plaintiffs are unquestionably members of this group.

■ Although the Act and the legislative history are silent on the existence of private rights of action, I can see no reason to conclude that Congress intended to deny a private right, at least for injunctive relief requiring compliance with the Act. It would seem consistent with the purposes of the Act and useful to its enforcement to allow such an action to insure the intended beneficiaries the benefits the Act intended to confer on them. *See Cannon v. University of Chicago,* 441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979); *Howard v. Pierce,* 738 F.2d 722, 728–29 (6th Cir. 1984). The matter is more appropriately a concern of federal, than of state, law.

I find that an implied right of action at least for injunctive relief should be extended to plaintiffs to require compliance with the rent limitations of the Brooke Amendment. *Beckham v. New York City Housing Authority,* 755 F.2d 1074 (2d Cir.1985).

Accordingly the motion to dismiss the first claim is denied. It is unnecessary to reach the more difficult question of an implied right of action under § 202 of the Housing Act of 1959.[1]

---

1. The stated purpose for that Act is "to assist private nonprofit corporations, limited profit

sponsors, consumer cooperatives, or public bodies or agencies to provide housing and related

### 3. *Third Party Beneficiary Standing*

HUD argues that plaintiffs have no standing to seek relief as third party beneficiaries of either the Regulatory Agreement or Housing Assistance Payments contract between HUD and St. Margaret's. Whether parties are third party beneficiaries of a given contract depends on the specific facts of who the third parties are and what the contract contains. The contracts at issue embody in part the provisions of the Brooke Amendment and provide procedures for providing services in addition to those in the approved rental schedule. It is the sections of the contracts that reflect limitations from the Brooke Amendment that plaintiffs challenge were breached to their detriment by imposition of the mandatory meal charge.

I am persuaded by the reasoning of the Court of Appeals for the Seventh Circuit in *Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir. 1981) that "[i]f the tenants are not the primary beneficiaries of a program designed to provide housing assistance payments to low income families, the legitimacy of the multi-billion dollar Section 8 program is placed in grave doubt." 643 F.2d at 1271.

■ To the extent plaintiffs challenge the portions of the contracts between HUD and St. Margaret's which deal with rent limitations and additional charges for services, plaintiffs have standing as third party beneficiaries to those contracts. The issue whether those contracts were in fact breached to the detriment of plaintiffs is not currently before the court. Although the issue is not altogether free from doubt, see *Reiner v. West Village Associates,* 768 F.2d 31 (2d Cir.1985), in my opinion, plaintiffs have sufficiently alleged a cause of action as third party beneficiaries under these contracts to withstand a motion to dismiss. In any event, the issue is not crucial in view of my ruling as to a private right of action for "rent" under Section 8.

### 4. *APA*

HUD moves to dismiss the fourth claim of the complaint which alleges HUD's approval of the mandatory meal charge was a promulgation of a rule without the notice and comment procedures required by the Administrative Procedures Act. HUD argues that its action fell under the exception to the APA governing rule making for matters relating to "public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a)(2). Because the meal program was implemented through loans and contracts with St. Margaret's, HUD argues it is exempt from the rule making process. The mandatory meal program is "appurtenant" to the subsidy program, the subsidy program was accomplished through loans and contracts, and therefore the approval of the mandatory meal charge is exempt from the APA.

HUD further argues that it is neutral to mandatory meal programs, and it is within the developer's authority to set a meal program even in the absence of HUD's current guidelines which state a developer "may" have mandatory meal programs. HUD argues that imposing a mandatory meal charge is part of the "tenant selection criterion" that is solely in the discretion of the project owner. *Daubner v. Harris,* 514 F.Supp. 856, 866 (S.D.N.Y.1981).

Plaintiffs respond that since HUD approval is required before project developers can establish a mandatory meal program, the standard for approving meal programs should have gone through the notice and comment procedure.

■ It is not evident from HUD's submissions that, at one stage or another, the standard for approval of mandatory meal charges in assisted projects should not have been subject to a notice and comment procedure under the APA. The exemption HUD claims from the APA is only argu-

---

facilities for elderly or handicapped families." 12 U.S.C. § 1701g(a)(1). The legislative history has no indication that a private right of action was intended, and unlike the Brooke Amend-

ment, plaintiffs are only indirectly the class upon which Congress intended to confer the benefits of § 202.

ably but not conclusively applicable to plaintiffs' claim for relief. Further, while project owners are free to impose tenant selection criteria, an arguably impermissible increase in the tenants' rent is not a "tenant selection criteria" under the *Daubner* analysis. Plaintiffs have alleged a cause of action under the APA, and HUD has not supported a grounds for dismissal based on the complaint.

### 5. Due Process

Plaintiffs assert in their sixth claim that imposition of the mandatory meal charge without requiring minimal procedures for ascertaining whether the charge is an essential service necessary and appropriate for each tenant's needs, deprives plaintiffs of property without due process of law. This claim is frivolous on its face and is dismissed.

SO ORDERED.