Ronald Dean BROWN, Appellee,

v.

Crispus C. NIX; John Henry; John Emmet; Paul Hedgepath; Charles Harper; Paul Grossheim; Hal Farrier; Appellants.

No. 93–3742.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1994.

Decided Aug. 26, 1994.

Rehearing Denied Oct. 18, 1994.

Layne M. Lindebak, Asst. Atty. Gen., Des Moines, IA, argued (Kristin W. Ensign, on the brief), for appellants.

Charles T. Traw, Iowa City, IA, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Crispus C. Nix, John Henry, John Emmet, Paul Hedgepath, Charles Harper, Paul Grossheim, and Hal Farrier ("prison officials") appeal the district court's denial of their motion for summary judgment on the ground of qualified immunity. We reverse and remand with directions to dismiss.

## I. BACKGROUND

Ronald Dean Brown is an inmate at the Iowa State Penitentiary (ISP). He filed this 42 U.S.C. § 1983 action for money damages and declaratory relief, contending that prison officials had deprived him of his constitutional rights by sentencing him to nine years of administrative segregation for disciplinary infractions. He asserts that prison officials have deprived him of his right to substantive due process through their arbitrary actions; that the cumulative punishment is disproportionate to the violations he committed; and that the punishment provisions are vague. Brown also asserts that his treatment amounts to cruel and unusual punishment.

Prison officials filed a motion for summary judgment in district court. They asserted, among other things, that they are immune from suit by reason of qualified immunity. The district court held that "[w]hile defendants may ultimately be entitled to qualified immunity ... the court feels that summary judgment is inappropriate at this time." *Brown v. Nix,* No. 4–89–CV–50333, Order, slip op. at 9 (S.D.Iowa Oct. 8, 1993).

There is no dispute about the material facts. ISP officials are required by statute to promulgate procedures for discipline. Iowa Code § 903A.4. Pursuant to that authority, ISP officials promulgated the handbook of policies and procedures ("the Blue Book"). Under the Blue Book, sanctions for disciplinary infractions include, among other sanctions, "disciplinary detention," which is equivalent to solitary confinement, and "administrative segregation" which includes restriction to cell, room, or housing unit with or without a job assignment. Appendix at 65. The Blue Book states that the maximum term of disciplinary detention is thirty days per incident. There is no maximum term of administrative segregation. There is a provision for occasional review of the status of inmates in administrative segregation by a classification committee, and inmates in administrative segregation can earn "good time." Appendix at 68; Deposition of Paul Grossheim, Appendix at 242. The official responsible for drafting the Blue Book states that an inmate can get out of administrative segregation unless he "is being a complete ass." Deposition of Paul Grossheim, Appendix at 248.

Brown committed over forty disciplinary infractions in a period of two years. These infractions included sexual misconduct, ver-

bal abuse, possession of contraband, vandalism and minor assault. For each infraction he was given a consecutive term of administrative segregation, sometimes in conjunction with a shorter term of disciplinary detention. Brown's terms of administrative segregation range from two days to one year, and they now total nearly nine years. Brown concedes that he was afforded adequate procedural due process in connection with the sentences. It is uncontroverted that each term of administrative segregation was imposed as a punitive sanction. Brown contends that the aggregation of his sentences is an excessive punishment.

## II. DISCUSSION

### A. Jurisdiction

■ Although the denial of a motion for summary judgment is ordinarily not appealable, a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final judgment. *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993). This exception exists "because qualified immunity provides '*immunity from suit* rather than a mere defense to liability, and ... is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)) (alteration in original). Thus, the question should generally be decided at the earliest possible time. *See Ripson v. Alles,* 21 F.3d 805, 808 (8th Cir.1994). Accordingly, because there is no dispute as to the material facts, we find that it was error for the district court not to rule on the merits of the prison officials' qualified immunity defense.

### B. Substantive Due Process

■ Generally, prison officials may rely on the defense of qualified immunity for protection from inmate suits for money damages. *Mahers,* 12 F.3d at 785. In order to lose their qualified immunity, officials must violate an inmate's clearly established constitutional rights. *Id.* The contours of a clearly established right must be sufficiently clear

that a reasonable official would understand what conduct violates that right. *Id.* The test focuses on the objective reasonableness of an official's act. *Id.*

As a necessary concomitant to determining whether the constitutional right asserted by an inmate is "clearly established" at the time the official acted, we must determine whether the inmate has asserted a violation of a constitutional right at all. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Early resolution of this legal question permits courts to weed out suits which fail the test without requiring an official who rightly claims immunity to engage in expensive and time-consuming litigation. *Id.*

■ Brown's suit asserts that officials violated his substantive due process rights.[1] The Supreme Court has recognized that the Constitution embodies a concept of substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). Thus, substantive due process claims are analyzed under two tests. First, the state is forbidden from infringing certain "fundamental" liberty interests at all—no matter what process is provided—unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). Second, the state's conduct must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity. *Weimer v. Amen,* 870 F.2d 1400, 1405 (8th Cir.1989).

We approach Brown's contention that the ISP officials violated a fundamental right with caution, for "'[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field'". *Reno,* —— U.S. at ——, 113 S.Ct. at 1447 (quoting *Collins v. City of Harker Heights,* —— U.S. ——, ——,

---

1. Our analysis of this relatively straightforward case was complicated by the fact that, despite their agreement that this is solely a substantive

due process challenge, the parties' briefs cite numerous, largely irrelevant, procedural due process cases.

112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). In this Circuit, we have placed a heavy burden on those wishing to extend substantive due process into new arenas. *Weimer,* 870 F.2d at 1405. The fundamental liberty interests implicated in this type of substantive due process challenge generally involve those rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Salerno,* 481 U.S. at 751, 107 S.Ct. at 2103.

◾ In examining Brown's claim, we remember that a prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Turner v. Safley,* 482 U.S. 78, 95, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987). However, in a prison setting "it is sometimes necessary to attenuate constitutional rights enjoyed in a more unfettered way by those not similarly situated." *Goff v. Dailey,* 991 F.2d 1437, 1441 n. 7 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993). The inmates' interests must be balanced, however, with the government's interest in assuring inmates' safety and in avoiding " 'burdensome administrative requirements that might be susceptible to manipulation.' " *Id.* at 1441 (quoting *Superintendent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)).

◾ We find that the deprivations suffered by Brown do not amount to the deprivation of a fundamental right, and we are puzzled by Brown's assertions in this regard.[2] His argument is couched in terms of deprivation of a "liberty interest," implying that he has a fundamental right to be housed in the general population of the prison, rather than the more restrictive setting of administrative segregation. While such an interest

may be sufficient to trigger the protections of the procedural prong of the due process clause, that is not to say that it amounts to a fundamental right for substantive due process purposes.[3] Whatever the definition of fundamental rights for substantive due process purposes, we can confidently state that Brown has not asserted the deprivation of a right so rooted in our traditions that the state must show a compelling interest in order to justify any deprivation.

Neither does segregating Brown from the general population shock the conscience or offend notions of fairness in light of his repetitive misconduct. It does not offend our notions of fairness for prison officials, after hearing, to discipline an unruly inmate by placing him on cell restriction. This is especially true since his sentence is periodically reviewed and he can earn early release by appropriate behavior. Brown has not convinced us that any of his many sentences are disproportionate to his offenses, which, though not necessarily violent, cannot be characterized as minor. Neither has he shown that the acts of the prison officials are arbitrary or capricious.

The essence of Brown's complaint amounts to nothing more than dissatisfaction with his aggregate sentence. Having no fundamental right to be housed in the general population, and absent conduct by prison officials that shocks the conscience or offends our notions of fairness, such dissatisfaction does not amount to a deprivation of substantive due process.

## C. Cruel and Unusual Punishment

◾ The treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,*

---

**2.** Brown also claims that the prison officials' acts violate either the Iowa Code or internal prison guidelines regarding imposition of administrative segregation. Brown may not base his section 1983 claim on a violation of the state statute and officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision. *Swenson v. Trickey,* 995 F.2d 132, 135 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993).

**3.** Brown may have a liberty interest sufficient to trigger the protections, here, a *Wolff v. McDonald*-type hearing, afforded by the procedural component of the Due Process Clause. Since he has been afforded an adequate hearing in connection with each of his sentences, this point is irrelevant to our analysis.

—— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Id.* A prison official violates the Eighth Amendment when two conditions are met: 1) the deprivation alleged is sufficiently serious—the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities; and 2) the prison official acts with "deliberate indifference"—he knows of and disregards an excessive risk to inmate health and safety. *Id.* at ——, ——, 114 S.Ct. at 1977, 1979. With those standards in mind, we find that Brown has not alleged an Eighth Amendment violation.

## III. CONCLUSION

Accordingly, the order of the district court is reversed and this action is remanded to the district court with directions to dismiss.