James J. HANRAHAN, Plaintiff,

v.

HOUSING AND REDEVELOPMENT AUTHORITY OF DULUTH, MINNESOTA, and Richard W. Ball, Executive Director of HRA of Duluth, Minnesota, Defendants.

Civ. No. 5–95–19.

United States District Court, D. Minnesota, Fifth Division.

Nov. 13, 1995.

James J. Hanrahan, pro se, in forma pauperis.

Robert H. Magie, III, Duluth, MN, for defendants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon Cross–Motions for Summary Judgment.

A Hearing on the Motions was conducted on September 28, 1995, at which time the Plaintiff appeared *pro se, in forma pauperis,* and the Defendants appeared by Robert H. Magie, III, Esq.

For reasons which follow, we deny the Plaintiff's Motion for Summary Judgment and we grant the Defendants' Motion.

### II. *Factual and Procedural History*

The facts of this case are not in material dispute. On June 17, 1994, the Plaintiff and his wife (the "Hanrahans") applied for low income public housing under the auspices of the Defendant Housing and Redevelopment Authority of Duluth ("HRA"). The Hanrahans were given a Federal preference in their application because they were then living in substandard housing. Thus, their names were placed at the top of the HRA's waiting list for available housing.

On October 18, 1994, the Hanrahans were offered their choice of two apartments at the HRA's Tri–Tower complex. They refused both of these units because they claimed that they were located too high up in the building.[1] As a result of this refusal, the HRA redated the Hanrahans' application and placed their names at the bottom of the waiting list, and they lost their Federal preference and were so notified by the HRA.[2]

On or about November 18, 1994, the Hanrahans had again risen to the top of the waiting list, and were offered a second story apartment unit at the Midtowne Manor I complex. Simultaneously, the Hanrahans were informed of a possible opening at Midtowne Manor II, a complex which requires its residents (who are predominantly elderly) to purchase one meal a day through its mandatory meal plan. At that time, the Plaintiff indicated that he and his wife were not interested in Midtowne Manor II, with its meal plan, because they practiced a vegetarian

---

1. The Plaintiff has subsequently averred that he also objected to these units because they were both located near a trash chute. *Defendants' Memorandum Exhibit B–1* at 1.

2. The procedures used by the HRA for selecting applicants from a waiting list are those which have been supplied to it, as part of a uniform system, by the United States Department of Housing and Urban Development ("HUD"). Under this system, a local housing authority is permitted to follow one of two plans. Plan "A", which is utilized by the HRA, provides that a housing applicant's name shall be removed to the bottom of the list after he has rejected one suitable residential unit. Under Plan "B", the applicant is offered two to three units before being placed at the bottom of the list. See, *Defendants' Memorandum Exhibit F–1.* In addition, a housing authority may determine that, by virtue of being placed at "the bottom of the waiting list," an applicant has lost the benefit of any Federal preferences, for a specific period of time, with the effect of preventing the applicant "from quickly recycling to the top of the waiting list." *Defendants' Memorandum Exhibit F–2.*

diet. The Hanrahans did orally accept the unit at Midtowne Manor I and were scheduled to move in on January 1, 1995, however, on November 22, 1994, Mrs. Hanrahan telephoned the HRA and stated that she and the Plaintiff were not interested in the unit at Midtowne Manor I, without giving any further reason for the refusal.[3] Pursuant to an unwritten local HRA policy, the Hanrahans' application was withdrawn from the waiting list after this second refusal of a suitable unit.

On or about December 2, 1994, the Plaintiff met with Mark Jennings, the HRA's Director of Public Housing, for an informal Hearing on his objections to the removal of his name from the waiting list. A formal Hearing was held on December 29, 1994, before Hearing Officer Wendy Schwartz. At that Hearing, a representative of the HRA agreed to reinstate the Hanrahans at the bottom of the waiting list, but the Plaintiff objected to being placed at the bottom and not at the top of the list. He also stated that the reason for their refusal of the unit at Midtowne Manor II was because of that facility's mandatory meal plan, which conflicted with their religious belief in adhering to a strict vegetarian diet. The HRA representative indicated that the agency had provisions for such religious dietary needs, see, *24 C.F.R. § 278.12(b)*,[4] and that a staff dietician would be available to work with the Hanrahans in selecting a menu that would comply with their dietary restrictions. The Plaintiff, however, showed no interest in working cooperatively with the HRA on this point.[5] Instead, he maintained that because of this conflict, the HRA should have exempted the Hanrahans altogether from the meal require-

ment, pursuant to 24 C.F.R. § 278.12(b), and that the HRA's failure to grant such an exemption violated their First Amendment right to the free exercise of their religion.

The Hearing Officer found that "there would be sufficient alternatives available to the Hanrahans if they were willing to work cooperatively with HRA staff and that HRA would be acting within its authority in not granting an exemption from the mandatory meal plan." *Defendants' Memorandum Exhibit B–2.* Schwartz also found that the HRA was "clearly acting within federal regulations by dropping the application to the bottom of the list after the applicant rejected the apartments." *Id.* The Plaintiff further sought to raise a constitutional challenge to the applicable Federal regulations, but was told that the Hearing was not the proper forum for such a challenge. *Id.*

On January 23, 1995, the Defendant Richard Ball ("Ball"), who is the Executive Director of the HRA, notified the Plaintiff that his request for an exemption from the Midtowne Manor II meal requirement was denied. Ball informed the Plaintiff that, "[i]f we were to grant the exemption you seek, we would be precluding the availability of one of a limited number of housing units we offer to those on our waiting list who need or choose to have meal service, for those individuals it was intended to serve." *Defendants' Memorandum Exhibit A.*

On January 5, 1995, the Hanrahans' application was reinstated at the bottom of the public housing waiting list. On February 9, 1995, the Hanrahans were offered a unit in the Harbor View Homes complex, a facility

---

**3.** The Plaintiff now maintains that the Midtowne Manor I unit was rejected because of its location near a common bathroom and due to its exposure to diesel truck fumes. *Defendants' Memorandum Exhibit B–1* at 1.

**4.** 24 C.F.R. § 278.12(b) provides as follows:
A project owner may grant any tenant an exemption because of the tenant's dietary practices, for financial reasons, or for other reasons. Where a project owner does not grant an exemption for a religious-based dietary practice, the owner must offer an alternative menu that does not conflict with the tenant's religious dietary practice.

**5.** At his deposition, on August 28, 1995, the Plaintiff appeared to deny that the HRA had offered to accommodate his religious practices by designing a vegetarian diet. *Defendants' Supplemental Memorandum, Exhibit A* at 33–34. With his Complaint, however, the Plaintiff attached a copy of Hearing Officer Schwartz's Report, in which she expressly notes that the HRA offered such an accommodation. See, *Exhibits to Plaintiff's Complaint—Hearing Officer's Report* at 1. Accordingly, we do not consider this point to be a genuine issue of material fact.

without a mandatory meal plan. The Hanrahans refused this offer.

The Plaintiff filed this action, pursuant to Title 42 U.S.C. § 1983, on January 31, 1995. He alleges that the Defendants, while acting under color of State law, deprived him of his constitutional rights under the First, Ninth and Fourteenth Amendments to the United States Constitution, by their actions with respect to his application for public housing. The Plaintiff further alleges that the Defendants have violated Federal statutory and regulatory law. The Defendants have denied any wrongdoing.

### III. *Discussion*

■ A. *Standard of Review.* The Court is mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 471 (8th Cir.1995); *Barnard v. Jackson County, Missouri,* 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit Inc. v. Pacific Mutual Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66–67 (8th Cir.1994).

■ As Rule 56(e), Federal Rules of Civil Procedure, makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Commission,* 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

■ Moreover, a defendant is entitled to Summary Judgment where a plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322, 106 S.Ct. at 2552; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.,* 477 U.S. at 323, 106 S.Ct. at 2553; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

B. *Legal Analysis.* Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be consid-

ered to be a statute of the District of Columbia.

*Title 42 U.S.C. § 1983.*

To prevail in a Section 1983 action, the Plaintiff must successfully demonstrate that his rights, privileges or immunities, which are secured by the Constitution or by Federal law, have been infringed by the Defendants while they were acting under color of State law. *Id.* It is undisputed that, at all times relevant to this action, the Defendants were operating under color of State authority. The critical issue, therefore, is whether the Defendants violated any of the Plaintiff's constitutional or other Federally protected rights. Only a violation of Federal law may serve as a basis for Section 1983 jurisdiction. See e.g., *Collins v. City of Harker*, 503 U.S. 115, 119, 112 S.Ct. 1061, 1065, 117 L.Ed.2d 261 (1992); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); *Sigler v. Lowrie*, 404 F.2d 659, 662 (8th Cir.1968), cert. denied, 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969). The Plaintiff alleges five categorical violations of the Constitution, or of Federal law, and we examine each of his arguments in turn.

1. *Free Exercise.*

The Plaintiff alleges that the Defendants' refusal to exempt him from Midtowne Manor II's mandatory meal requirement unconstitutionally interfered with the free exercise of his religious freedoms, as guaranteed by the First Amendment.

■ a. *Standard of Review.* A State actor substantially burdens the free exercise of religion when it conditions receipt of an important benefit upon conduct proscribed by religious belief, or where it denies such a benefit because of conduct mandated by religious belief and, thereby, substantially pressures the adherent to modify his behavior and violate his beliefs. *Hobbie v. Unemployment Appeals Commission of Florida*, 480 U.S. 136, 141, 107 S.Ct. 1046, 1049, 94 L.Ed.2d 190 (1987); see also, *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); *Crain v. Board of Police Commissioners*, 920 F.2d 1402, 1409–10 (8th Cir.1990). Such burdens can be justified only if they are narrowly tailored to serve a compelling Government interest. *Id.*[6]

■ b. *Legal Analysis.* Here no burden has been imposed upon the Plaintiff's religious beliefs, as the Defendants have taken reasonable steps to accommodate his religious freedom. Rather, the Plaintiff simply will not be accommodated. The HRA has offered to design a diet, suitable to the Plaintiff's religious tenets, that would enable he and his wife to reside at Midtowne Manor II, in compliance with the meal requirement. The Plaintiff, however, has rejected this attempt at accommodation. In addition, the HRA has offered the Hanrahans several available units outside of Midtowne Manor II, which do not have a meal requirement, but the Plaintiff has also refused these offers to accommodate. As a consequence, the Defendants are neither conditioning the benefit of public housing upon conduct that is proscribed by the Hanrahans' religious beliefs, nor are they denying the Hanrahans housing because of religious observances that are mandated by their beliefs. The Plaintiff's recurrent rejection of the Defendants' reasonable attempts at accommodation amounts to nothing more than an intractable insistence that he be furnished the housing of his choice. Needless to say, the Plaintiff is free to reject every housing unit that is offered to him, but where, as here, those refusals are not soundly premised upon the free exercise clause or the RFRA, the Defendants have not committed an actionable wrong.[7]

---

6. This formulation, which is known, colloquially, as the *Sherbert v. Verner* test, is also the standard by which Government acts, that are alleged to infringe upon religious belief, are evaluated under the Religious Freedom Restoration Act ("RFRA"). See, *Title 42 U.S.C. § 2000bb–1(b)*. Therefore, State action, which withstands scrutiny under the *Sherbert v. Verner* test, will also comport with the proscriptions of the RFRA.

7. In his proposed pretrial conference agenda, the Plaintiff also alleges—without more—a violation of the "Fair Housing Act of 1988." We construe this to be a reference to Title 42 U.S.C. § 3604(a) and (b), which prohibit the following:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person

## 2. Procedural Due Process.

The Plaintiff maintains that he had a vested property interest in a Midtowne Manor II apartment unit and, furthermore, that he was deprived of that property interest without due process of law.

a. *Standard of Review.* Procedural due process issues involve a two-step inquiry. First, to obtain relief, the complaining party must have possessed a liberty or property interest which has been infringed by governmental interference. The next step inquires into whether the procedures attendant to that deprivation were constitutionally sufficient. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). To have a protected property interest in the receipt of a public benefit—such as public housing—"a person clearly must have more than an abstract need or desire for it," or "a unilateral expectation of it," for he must "have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Any deprivation of a protected property interest must be preceded by notice and by an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

b. *Legal Analysis.* The Plaintiff's procedural due process claim is clearly without merit since we reject, as wholly unsupported, the contention that the Plaintiff possessed a protected property interest either in a Midtowne Manor II apartment unit, or in placement at the top of the HRA's public housing waiting list. At best, he possessed a property interest in obtaining public housing [8]—an interest which the Defendants have not abrogated in the least as they have repeatedly offered the Plaintiff apartment units which he has declined to accept. Moreover, assuming *arguendo,* that the Plaintiff did possess a property interest in the Midtowne Manor II unit, he received all of the process to which he was due upon his rejection of that unit. For instance, the Defendants provided the Plaintiff with the required notice before initially placing his application at the bottom of the waiting list. *Defendants'. Memorandum Exhibit A.* Furthermore, he was provided with two opportunities to be heard: first, in the informal Hearing before Jennings and, second, at the formal Hearing before Hearing Officer Schwartz. Accordingly, we conclude that the Plaintiff received all of the process to which he was due and, because his procedural due process rights were not infringed, the Defendants are entitled to a grant of Summary Judgment on this issue.

## 3. Substantive Due Process.

The Plaintiff urges that the imposition of the mandatory meal requirement at Mid-

because of race, color, *religion,* sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, *religion,* sex, familial status, or national origin.

*Title 42 U.S.C. § 3604(a) and (b)* [Emphasis added].

Nevertheless, the Plaintiff's claim under this Statute fails for the same reasons that his free exercise claim has faltered. As detailed in the text of this Opinion, the Defendants have not discriminated against the Hanrahans nor have they denied the Hanrahans access to public housing because of their religious beliefs. Accordingly, the Plaintiff's claim under this Section is without merit.

Finally, at oral argument, the Plaintiff contended that the Defendants' actions violated the analogous free exercise provision of the Minnesota Constitution. See, MINN. CONST. art. 1, § 16. As noted earlier, however, Section 1983 relief is only available to redress violations of Federal law, see e.g., *Collins v. City of Harker,* supra, 503 U.S. at 119, 112 S.Ct. at 1065; *DeShaney v. Winnebago County Department of Social Services,* supra, 489 U.S. at 202, 109 S.Ct. at 1006; *Sigler v. Lowrie,* supra, at 662, and no exception is made for State constitutional provisions. See, *California v. LaRue,* 409 U.S. 109, 110 n. 1, 93 S.Ct. 390, 393 n. 1, 34 L.Ed.2d 342 (1972). Accordingly, finding no Federal violation, we have no occasion to address the Plaintiff's State constitutional claim. See, *Title 28 U.S.C. § 1367(c)(3).*

8. We emphasize that even this may be a doubtful proposition. See, *Hill v. Group Three Housing Development Corp.,* 799 F.2d 385, 391 (8th Cir. 1986) (the Plaintiffs had no property interest in section 8 housing benefits).

towne Manor II is an invasion of his fundamental right of privacy. See, *Plaintiff's Memorandum filed September 12, 1995* at 1–2. Although he bases this challenge upon the Ninth Amendment, a claim which alleges a State's interference with individual fundamental rights, is properly analyzed in the context of the Fourteenth Amendment's due process clause, and so shall we proceed.

■■■■ a. *Standard of Review.* The Constitution embodies a concept of substantive due process, which prevents Government actors from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987); *Brown v. Nix,* 33 F.3d 951, 953 (8th Cir. 1994). Substantive due process claims are, therefore, analyzed under two tests. First, the Government is forbidden from infringing upon certain "fundamental" liberty interests to any degree—no matter what process is provided—unless the infringement is narrowly tailored to serve a compelling governmental interest. *Brown v. Nix,* supra at 953, citing *Reno v. Flores,* 507 U.S. 292, 301, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). Second, the Government's conduct somehow "must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity." *Brown v. Nix,* supra at 953, citing *Weimer v. Amen,* 870 F.2d 1400, 1405 (8th Cir.1989).

■■■■ b. *Legal Analysis.* The Plaintiff offers no authority to bolster his contention that he has a fundamental right to reside at Midtowne Manor II without the mandatory meal requirement. In this Circuit, however, a person who seeks to extend substantive due process rights beyond their current frontiers bears a heavy burden. *Brown v. Nix,* supra at 954. Since the Plaintiff has offered no support for his substantive due process arguments, he has failed to carry—let alone advance—that burden. Interests protected under substantive due process generally involve those rights "so rooted in the traditions or conscience of our people as to be ranked as fundamental." *United States v. Salerno,* supra, 481 U.S. at 751, 107 S.Ct. at 2103. As a result, " '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " *Reno v. Flores,* supra, 507 U.S. at 302, 113 S.Ct. at 1447, quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). As the Plaintiff offers no authority in support of his assertion of a fundamental loss, and because we find his participation in the meal program, as a condition of his residence at Midtowne Manor II, neither "shock[s] the conscience[,] * * * offend[s] our judicial notions of fairness," nor is otherwise "offensive to human dignity," *Brown v. Nix,* supra at 953, his substantive due process claim fails.[9]

### 4. *Equal Protection.*

The Plaintiff asserts that he is being denied equal protection of the laws because of the HRA's removal of his application from the top to the bottom of the waiting list. As noted earlier,[10] the procedures by which the HRA selects applicants from a waiting list

---

**9.** The Plaintiff further argues that he is entitled to an exemption from the Mandatory Meal Plan as a matter of right. See, *Plaintiff's Notice of Opposition to Defendants' Motion for Summary Judgment* at 3.

The Plaintiff is mistaken. While 24 C.F.R. § 278.12(b) does allow for such an exemption, whether such an exemption is to be granted remains a decision committed to the discretion of the project owner. Here, the Defendant Ball concluded that such an exemption was not warranted. While actions taken pursuant to HUD regulations are reviewable under the Administrative Procedure Act, see e.g., *Hill v. Group Three Housing Development Corp.,* 799 F.2d 385, 396 (8th Cir.1986), such actions may be set aside only if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Title 5 U.S.C. § 706.* Such is not the case here. Ball's stated reason for declining to afford the Hanrahans an exemption was that to do so "would be [to preclude] the availability of one of a limited number of housing units we offer to those on our waiting list who need or choose to have meal service, for those individuals it was intended to serve." *Defendants' Memorandum Exhibit A.* We find nothing arbitrary or capricious in reserving access to a limited meals program to those who require or desire its availability. Accordingly, we find no abuse of discretion here.

**10.** See, supra note 2, and accompanying text.

are consistent with a uniform program promulgated by HUD.

■■■■■ a. *Standard of Review.* The Fourteenth Amendment's Equal Protection Clause requires Government actors to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); see also, *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1130 (1995). The Plaintiff does not claim membership in a suspect class, nor does he persuasively allege the deprivation of a recognized fundamental right. Accordingly, we review his equal protection claim under a rational basis standard. *Id.*, 473 U.S. at 441–43, 105 S.Ct. at 3255–56; *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993), cert. denied, —— U.S. ——, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993). Under this standard, the Plaintiff will prevail only if:

> (1) he can demonstrate that he is similarly situated with persons who were treated differently by the Defendants, and
>
> (2) the Defendants have no rational basis for this dissimilar treatment.

*Id.; More v. Farrier*, supra at 271; *Moreland v. United States*, 968 F.2d 655, 660 (8th Cir.1992), cert. denied, 506 U.S. 1028, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992).

■■■■ b. *Legal Analysis.* The Plaintiff's equal protection claim must fail because he is unable to demonstrate that the HRA has treated him differently than others who are similarly situated. Specifically, the Plaintiff does not offer any support for his conclusory assertion that only he and his wife—and not other prospective public housing tenants who have refused offers of suitable housing— were removed to the bottom of the waiting list after only one such refusal. To the contrary, the Hanrahans had been offered—and had refused—two units before each of the occasions on which their names were moved to the bottom of the list. Thus, they received **superior** treatment, at the hands of the HRA, than is specifically required by the applicable HUD regulations. Accordingly, we find no basis to conclude that the Plaintiff

has been denied the equal protection of the laws.

5. *Title 42 U.S.C. § 1437f and 24 C.F.R. § 813.107.*

The Plaintiff contends that the imposition of a mandatory meal program at Midtowne Manor II violates the maximum rent standards which are set forth in Title 42 U.S.C. 1437f and 24 C.F.R. § 813.107. In brief, these provisions place a cap on the percentage of a public housing tenant's monthly adjusted income which may be chargeable as rent. The Plaintiff asserts that the imposition of a mandatory meal fee violates the rent cap because it forces a tenant to pay an amount, in excess of the cap, in order to live in such a facility.

■■■ This same argument has been considered and rejected by a number of Courts outside of this Circuit. In *Aujero v. CDA Todco, Inc.*, 756 F.2d 1374, 1376 (9th Cir. 1985), the Court concluded that the meal fee was not "rent," as envisioned by the plain meaning of Section 1437f:

> We have little difficulty, however, in construing that the meal charge does not constitute rent. We construe the term in accord with its ordinary meaning. Rent normally connotes "[c]onsideration paid for use or occupation of property." * * * This definition corresponds to the usage of the term under the [Statute]. Section 1437f(c)(3) refers to "payment with respect to any dwelling unit." * * * The legislative history of the [Statute] provides further support for our interpretation. S.Rep. No. 392, 91st Cong., 1st Sess. 19, *reprinted in* 1969 U.S.Code Cong. & Ad. News 1524, 1542 ("[f]or purposes of determining the maximum amount of assistance payments with respect to any unit, the 'rental' for such unit would be the proportionate share of the total shelter costs to be borne by the low-income tenants of a project attributable to that unit."). These various usages of the term "rent" support the government's theory that rent refers solely to payment for shelter, not payment for shelter and food.

*Aujero v. CDA Todco, Inc.*, supra at 1376 [some internal citations omitted].

**438**

Thus, the Court held that meal fees should not be construed to combine with true rent payments in determining the maximum rent allowed under the cap. *Id.* Accord, *Mayoral v. Jeffco American Baptist Residences, Inc.*, 726 F.2d 1361 (10th Cir.1984), cert. denied, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984); *Gonzalez v. St. Margaret's House Housing Development Fund Corp.*, 668 F.Supp. 187 (S.D.N.Y.1987), aff'd, 848 F.2d 391 (2nd Cir.1988); *Johnson v. Soundview Apartments Housing Development Fund Co., Inc.*, 585 F.Supp. 559 (S.D.N.Y.1984). The Plaintiff cites no authority in support of his conclusion that the meal program fee is "rent," as that term is used within the Statute or Regulation,[11] and we accede to the views expressed by those Courts which have addressed the requirement and have rejected the claim. Accordingly, the Defendants are entitled to Summary Judgment on this issue as well.

In conclusion, following our thorough review of the Plaintiff's claims, we conclude that, for each, he has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322, 106 S.Ct. at 2552; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* supra at 699. No genuine issue of material fact has been shown to exist, and the Defendants are entitled to Judgment as a matter of law.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion for Summary Judgment [Docket No. 30] is DENIED.

2. That the Defendants' Motion for Summary Judgment [Docket No. 19] is GRANTED.

---

11. The one case cited by the Plaintiff—*Gonzalez v. St. Margaret's House Housing Development Fund Corp.*, 620 F.Supp. 806 (S.D.N.Y.1985)— was merely an earlier skirmish in *Gonzalez v. St. Margaret's House Housing Development Fund Corp.*, 668 F.Supp. 187 (S.D.N.Y.1987), aff'd, 848 F.2d 391 (2nd Cir.1988), which ultimately concluded that the meal fee was not "rent."